# Illinois Official Reports

## Appellate Court

---

> ## *People v. Smith*, 2021 IL App (1st) 181728

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORY SMITH, Defendant-Appellant. |
| District & No. | First District, Third Division<br>No. 1-18-1728 |
| Filed | June 30, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-CR-21554; the Hon. Alfredo Maldonado, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and David T. Harris, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Tasha-Marie Kelly, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court, with opinion.
Justice Ellis concurred in the judgment and opinion.
Justice Ellis also specially concurred, with opinion.
Justice McBride dissented, with opinion.


## OPINION

¶ 1        Defendant, Gregory Smith, was convicted of two counts of attempted first degree murder and two counts of aggravated battery with a firearm. Defendant was found guilty of shooting two individuals and was sentenced to 21 years in prison. One of the shooting victims testified at trial that defendant was the shooter. The other victim did not testify.

¶ 2        The victim that did not testify at trial came forward years later and submitted an affidavit swearing that defendant was not the shooter. In his affidavit, the victim avers that he was speaking with defendant just before the shooting when someone other than defendant shot him. The victim further avers that he told the detectives investigating the shooting that defendant was not the shooter and that he only recently learned defendant was convicted. The victim states that he was unaware of defendant's trial and that he would have testified that defendant was not the person who shot him if he had known about the trial.

¶ 3        Defendant filed a postconviction petition asserting a claim of actual innocence. Defendant attached the victim's affidavit to his postconviction petition. In his petition, defendant states that the victim's affidavit "is new evidence which would have changed the result of [defendant's] trial." The trial court dismissed defendant's postconviction petition at the second stage. Defendant now appeals the dismissal of his postconviction petition. We conclude that defendant has made the requisite showing to have his petition advanced to the third stage of postconviction proceedings, and accordingly, we reverse. Defendant is entitled to an evidentiary hearing on his postconviction claims, so we remand the case for further proceedings.

¶ 4                                    BACKGROUND

¶ 5        On June 30, 2006, Cruse Caldwell and Maurice McDonald were walking south on South Ingleside Avenue from 52nd Street toward 53rd Street. McDonald stopped to talk to someone, and Caldwell continued walking. On the other side of the street and traveling in the opposite direction, Caldwell saw a boy walking alongside another young male who was on a bike. After Caldwell and the two individuals on the other side of the street had passed each other, Caldwell looked back and saw the boy crossing the street behind him near the area where McDonald had stopped to talk to someone. The boy pointed a gun at McDonald and shot at him. Caldwell began to run in the same direction he was already traveling, south, away from the shooter. Caldwell was also shot.

¶ 6        While Caldwell was being treated in an ambulance, he lost consciousness. Caldwell fell into a coma and did not regain consciousness for more than a month after the shooting. Caldwell identified defendant as the shooter during the trial. Caldwell testified that he was never asked to view a photo array or a lineup at any time prior to trial, so the first time he had an opportunity to identify who shot him was at trial.

¶ 7        Eddie Mastin, a retired Cook County Sheriff's officer, was sitting on a bench in the area of the shooting waiting to meet a friend. Mastin saw McDonald walk past him. When McDonald was halfway up the block, Mastin heard gunshots. Mastin saw a man on a bicycle and then saw another man jump on the back of the same bike. The person who jumped on the back of the bike had something in his hand that he put into his pocket, and that individual told the person on the front of the bike to "go."

¶ 8        After hearing the gunshots and seeing the suspicious individuals flee, Mastin walked down the street to see what happened. Mastin found McDonald on the ground with a gunshot wound. Mastin did not see the shooting occur, but he saw who he believed to be the perpetrators from about a half block away. A month after the shooting, detectives showed Mastin a photo array, and Mastin identified defendant as the person that jumped onto the back of the bike and who he believed to be the shooter. Mastin also identified defendant in a physical lineup.

¶ 9        Officer John Thornton testified that he originally named two other individuals, Jonathan and Joshua McClellan, as suspects in this shooting. Thornton testified that he went to the McClellans' house and saw them in front of the residence. When the McClellans saw Officer Thornton, they fled into the residence. Jonathan jumped out of a window and escaped. Officer Thornton caught Joshua. A gunshot residue test was administered to Joshua, and it was negative. Joshua was then released and was no longer considered a suspect. Mastin identified a photo of Jonathan as the person riding the bike that the shooter jumped onto after the shooting.

¶ 10       Detective John Foster testified that he did not know McDonald's whereabouts at the time of the trial, but Foster testified that he had been looking for McDonald for at least 30 to 45 days leading up to the trial. The State planned to call McDonald as a witness, but because McDonald could not be located, the State went forward with Caldwell and Mastin as the occurrence witnesses.

¶ 11       After a trial, a jury found defendant guilty of two counts of attempted murder and two counts of aggravated battery with a firearm. The trial court sentenced defendant to 21 years in prison. Defendant filed an appeal of his conviction and his sentence. We affirmed. See *People v. Smith*, No. 1-09-2256 (2011) (unpublished order under Illinois Supreme Court Rule 23).

¶ 12       Defendant filed a *pro se* postconviction petition and then subsequently filed a supplemental postconviction petition with the assistance of counsel. Attached to defendant's supplemental postconviction petition is an affidavit from McDonald. In his affidavit, McDonald avers that he was shot on June 30, 2006, on South Ingleside Avenue. McDonald avers that he viewed a lineup after the shooting and identified defendant in that lineup as "the last person I spoke to before the shooting." McDonald swears that he "made it clear to the detectives, Gregory Smith was not the shooter." McDonald states that he was not in town when defendant was tried for the shooting and that he only learned that defendant was convicted years after the trial. McDonald avers that he would have testified for defendant had he known about the trial. McDonald reiterates in his affidavit that "Gregory Smith did not shoot me or Cruse Caldwell."

¶ 13       The trial court dismissed defendant's postconviction petition at the second stage. In addressing whether McDonald's affidavit constituted newly discovered evidence, the trial court explained that if McDonald told the officers that defendant was not the shooter, "presumably the State disclosed this to the defense to comply with its obligations under *Brady*." See *Brady v. Maryland*, 373 U.S. 83 (1963). The trial court also found that "the petition and affidavit do not explain why McDonald was unavailable to [defendant] at trial or why

[defendant] only obtained an affidavit from [McDonald] nearly seven years after." The trial court concluded that McDonald's statement "could have been and likely was discovered before trial."

¶ 14　　　As to the merit of defendant's actual innocence claim, the trial court stated that even if McDonald's affidavit was considered newly discovered evidence, it "does not convey a trustworthy eyewitness account." The trial court found the affidavit untrustworthy on the basis that it is "noticeably scant on details and conclusory" and because "McDonald does not say who did shoot him and Caldwell if [defendant] didn't." The trial court stated that "presumably" McDonald would know and be able to identify the shooter by name or description if defendant was not the shooter. The trial court found that, even if the statements in the affidavit were accepted and defendant was not the shooter, defendant might have acted in concert with the shooter. Finally, the trial court noted that McDonald did not explain in his affidavit the nature of the conversation that he was having with defendant when he was shot, and the court found that "[i]f it was unfriendly, that would further implicate defendant's involvement."

¶ 15　　　　　　　　　　　　　　　ANALYSIS

¶ 16　　　This appeal concerns the trial court's dismissal of a postconviction petition at the second stage of proceedings under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). The Act provides a criminal defendant the right to challenge his conviction by filing a petition in the circuit court. *Id.* § 122-1. The Act sets forth a process by which a defendant can assert that, in the proceedings that resulted in his conviction, there was a substantial denial of his federal or state constitutional rights. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009).

¶ 17　　　The Act provides for a three-stage process for adjudicating postconviction petitions. *People v. Harris*, 224 Ill. 2d 115, 125 (2007). At the first stage, the circuit court independently assesses the merit of the petition and may dismiss the petition if it is frivolous or patently without merit. 725 ILCS 5/122-2.1 (West 2018). At the second stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001).

¶ 18　　　The petition in this case contains a claim of actual innocence. At the second stage of postconviction proceedings, a petitioner must make a substantial showing of actual innocence such that an evidentiary hearing is warranted. *People v. Sanders*, 2016 IL 118123, ¶ 37. All well-pleaded factual allegations not positively rebutted by the trial record must be taken as true when considering the State's motion to dismiss a second-stage postconviction petition. *Id.* ¶ 42. A postconviction petition should only be dismissed at the second stage when the petitioner's allegations of fact, liberally construed and considered in light of the original trial record, fail to make a substantial showing of actual innocence. *People v. Lofton*, 2011 IL App (1st) 100118, ¶ 35. The circuit court's dismissal of a postconviction petition at the second stage is reviewed *de novo. People v. Rivera*, 2016 IL App (1st) 132573, ¶ 19.

¶ 19　　　To establish a claim of actual innocence as a basis for obtaining postconviction relief, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial. *People v. Edwards*, 2012 IL 111711, ¶ 32. "Newly discovered evidence" that would support a claim of actual innocence is evidence that was discovered after trial and that the petitioner could not

have discovered earlier through the exercise of due diligence. *People v. Robinson*, 2020 IL 123849, ¶ 47.

¶ 20       Defendant argues that the evidence supporting his actual innocence claim is "newly discovered" because the witness was not available at the time of trial and, despite looking for the witness, even the Chicago police and the state's attorney's office could not locate him before trial. McDonald confirms in his affidavit that he was out of town at the time of trial. Detective Foster testified that he looked for McDonald for 30 to 45 days leading up to the trial and could not find him. Thus, defendant contends, McDonald's statement could not have been obtained by him before trial through the exercise of due diligence.

¶ 21       The State argues that defendant was aware of McDonald and his potential as a witness at the time of trial. The State faults defendant's trial counsel for failing to make any documented efforts to secure McDonald as a witness on defendant's behalf. The State acknowledges that "the People expected McDonald to testify for the prosecution at trial *** but they could not locate McDonald." The State concludes that, because defendant knew about McDonald and the information that he possessed but failed to subpoena him for trial, any claim that the affidavit constitutes newly discovered evidence is defeated.

¶ 22       We find that McDonald's affidavit meets the criteria for newly discovered evidence. McDonald avers that he was out of town at the time of trial. Detective Foster testified that he exercised diligence in trying to find McDonald prior to trial. Detective Foster testified that he searched for McDonald for 30 to 45 days leading up to the trial and could not locate him. Even with that exercise of diligence, McDonald and his testimony could not be secured. The State provides no persuasive reason for holding that the defendant should have been able to secure evidence that the State itself tried to secure and failed. If the State and the Chicago Police Department could not locate McDonald and obtain his testimony, despite their significant efforts, then we cannot hold, as a matter of fact or law, that defendant should have discovered the evidence before trial.

¶ 23       As to the second requirement to establish a claim for actual innocence, evidence is "material" if it is relevant and probative to the petitioner's innocence, and it is "noncumulative" when it adds to what the jury heard. *Edwards*, 2012 IL 111711, ¶ 32; *People v. Coleman*, 2013 IL 113307, ¶¶ 96-97. McDonald's affidavit meets both of these requirements. The State does not contest the materiality or the noncumulative nature of the evidence on appeal.

¶ 24       As to the third and final requirement to establish a claim for actual innocence, the evidence must be of such conclusive character that it would probably change the result on retrial. *Edwards*, 2012 IL 111711, ¶ 32. The new evidence need not be entirely dispositive to be likely to alter the result on retrial. *Robinson*, 2020 IL 123849, ¶ 48. Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence. *Id.* Ultimately, the question on a petition for postconviction relief based on newly discovered evidence showing actual innocence is whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt. *Id.*

¶ 25       In this case, McDonald is obviously a key eyewitness. Even Caldwell testified that McDonald stopped to talk with someone on the street. McDonald now avers that the person he stopped to talk with was defendant and that someone else entirely approached him and shot him. Arguably, McDonald had an even better opportunity to observe the shooter than any other witness because he was closer to the shooter than anyone else, but certainly McDonald had the

best opportunity to know who he stopped to talk with and to know that it was someone other than defendant who approached him and shot him. Caldwell testified that he was half a block away from McDonald and that he began to run from the direction of the shooting once it began. Mastin testified that he was half a block away from the shooting and did not see the actual shooting happen, he just heard the gunshots. McDonald could not have made a more unequivocal statement in his affidavit that defendant was not the shooter.

¶ 26    Caldwell testified that the first time he ever had an opportunity to identify the person who shot him was during the trial. Caldwell made that identification more than two years after the shooting. He identified the person sitting at the defense table. Caldwell admitted in his trial testimony that his opportunity to view the shooter was limited.

¶ 27    Mastin's testimony is certainly important in the case and carried some indications of reliability. He consistently identified defendant as the shooter. But Mastin also was a half block away from the shooters. Mastin consistently stated that he saw McDonald walking alone when the other witnesses discussed McDonald and Caldwell walking together. Mastin potentially described McDonald's movements that day in a manner inconsistent with Caldwell's description of those movements. Mastin also identified Jonathan McClellan as the person riding the bike, and the McClellans were, at least for a time, considered suspects in this shooting. We must be cognizant of the perils associated with identification evidence (see *People v. Lerma*, 2016 IL 118496, ¶ 24), especially in light of McDonald's straightforward repudiation of the other witnesses' identifications. Defendant also raised an issue of possible deficits in Mastin's eyesight during trial.

¶ 28    While the statements in McDonald's affidavit conflict with other trial testimony, such as Caldwell and Mastin's identifications, the attestations in the affidavit are not positively rebutted by any evidence in the record. The conflict between the trial evidence and the new evidence must be resolved through factfinding and by making credibility determinations. *People v. Willingham*, 2020 IL App (1st) 162250, ¶ 37. The State suggests that McDonald made inconsistent statements to the police during the investigation that would make the attestations in his affidavit unbelievable by a trier of fact. But issues concerning whether McDonald's attestations should be believed are directed to a third-stage evidentiary hearing. *Id.*; *Robinson*, 2020 IL 123849, ¶ 60.

¶ 29    The trial court's analysis of the conclusive character of McDonald's statements is misguided. In assessing the merit of McDonald's affidavit, the trial court found that the affidavit "does not convey a trustworthy eyewitness account." The trial court went on to hypothesize about McDonald's credibility by questioning why McDonald did not include the identity of the shooter in his affidavit and to ponder whether McDonald and defendant were having a friendly conversation before the shooting. "Credibility determinations may be made only at a third-stage evidentiary hearing." *Sanders*, 2016 IL 118123, ¶ 42. In a proceeding for postconviction relief based on actual innocence, witness credibility findings and determinations as to the reliability of the supporting evidence are to be made only at a third-stage evidentiary hearing. *Robinson*, 2020 IL 123849, ¶ 61. Any presumptions or hypotheses should not be drawn against the petitioner when analyzing a motion to dismiss a postconviction petition but instead must be drawn in the petitioner's favor. See *People v. House*, 2020 IL App (3d) 170655, ¶ 28 (at the second stage, a postconviction petition must be liberally construed in favor of the petitioner).

¶ 30    McDonald plainly states that "Gregory Smith did not shoot me or Cruse Caldwell." When the allegations defendant makes in his postconviction petition are taken as true and the statements in McDonald's affidavit are viewed in a light most favorable to defendant, it is apparent that defendant has made a substantial showing of actual innocence such that an evidentiary hearing is warranted. When properly construed, the evidence, namely McDonald's sworn statement, places the trial evidence in a different light. The evidence supporting the postconviction petition, when viewed alongside the evidence submitted at trial, sufficiently undermines this court's confidence in the judgment of guilt such that defendant has made the requisite showing of actual innocence to entitle him to an evidentiary hearing.

¶ 31                                           CONCLUSION

¶ 32    Accordingly, we reverse, and we remand the case for further proceedings.

¶ 33    Reversed and remanded.

¶ 34    JUSTICE ELLIS, specially concurring:

¶ 35    I join the majority opinion in full. My dissenting colleague makes some valid points regarding what constitutes newly discovered evidence, and I would add only these brief observations in rebuttal.

¶ 36    While it is true that there is nothing in the record to indicate that defense counsel made any attempt to locate, interview, or subpoena McDonald over the two years preceding and including defendant's trial, that is not a basis for denying the claim here at second-stage proceedings for two reasons. The first is that defense counsel may, in fact, have both located and interviewed McDonald but not memorialized as much in the court file. There is no particular reason why a defense lawyer would want to publish his work product and otherwise privileged notes and observations in the court record. The absence of evidence in a court file does not mean that trial counsel did not speak with McDonald. All we can know with certainty, from its absence in the record, is that defense counsel never tried to serve McDonald with a trial subpoena.

¶ 37    Which leads to the second and far more important point: everything contained in the trial record points to the conclusion that McDonald identified petitioner to the police as the man who shot him. The State summarized it succinctly on appeal: "the People expected McDonald to testify for the prosecution at trial because he had given two statements to the police just after the shooting and had twice identified petitioner." McDonald identified petitioner both in a photo array and a lineup.

¶ 38    That is a critical fact because it explains why defense counsel did not issue a trial subpoena for McDonald's testimony. There is no conceivable reason why defense counsel would go to pains to haul a witness into court who was planning on implicating his client. Indeed, doing so would almost surely constitute ineffective assistance of counsel and blatant malpractice.

¶ 39    So while the absence of a trial subpoena might show a lack of due diligence when the supposedly "new" testimony was available all along to a defendant, it would make no sense to hold that against petitioner here, when by all accounts in the record, McDonald was not going to be a favorable witness for petitioner.

¶ 40    What is "new" here is not McDonald, himself, but the fact that he is now saying something different than he told the police—he is now saying that petitioner did not shoot him.

¶ 41    There are discrepancies, to be sure, between what the trial record shows and what McDonald says in his affidavit. While the trial record strongly suggests that McDonald identified petitioner as the shooter, McDonald says in his affidavit that he merely told the police that petitioner was the last person with whom he spoke before the shooting.

¶ 42    But these discrepancies are not a reason to dismiss this postconviction petition at the second stage. They are a reason to flesh this all out at a third-stage evidentiary hearing, where the State can continue to challenge whether this proffered evidence is "newly discovered."

¶ 43    As it stands now, as the State openly concedes, there is ample reason to believe that McDonald identified petitioner—twice—as the shooter to the police. If that is the case, it would be unfair and illogical to fault petitioner's trial counsel for failing to subpoena a prosecution witness to trial who would implicate his client.

¶ 44    JUSTICE McBRIDE, dissenting:

¶ 45    I respectfully dissent from the majority's decision to remand for third stage evidentiary proceedings. I would affirm the circuit court's second stage dismissal of petitioner's postconviction petition claiming actual innocence because petitioner has failed to show that (1) the affidavit supporting his petition is newly discovered evidence and (2) the evidence is so conclusive that it would probably change the result on retrial.

¶ 46    The sum and substance of McDonald's affidavit is that he was shot on June 30, 2006, at 52nd Street and Ingleside Avenue; that he viewed a lineup on August 21, 2006; and that he identified petitioner as the last person he spoke to before the shooting. McDonald insists that he made it clear to the detectives that petitioner was not the shooter. "Years later," McDonald learned that petitioner had been convicted of shooting him and Caldwell. McDonald states that petitioner did not shoot them and that McDonald would have come to court and testified but he was "out of town" and "unaware of [petitioner's] trial."

¶ 47    The trial court, concluded, in a 10-page written decision, that McDonald's affidavit was not newly discovered evidence and was not so conclusive as to probably change the result on retrial. I agree with the trial court's conclusions.

¶ 48    To support a claim of actual innocence, the evidence must be newly discovered, material and not cumulative, and of such a conclusive character that it would probably change the result on retrial. *People v. Coleman*, 2013 IL 113307, ¶ 96; *People v. Edwards*, 2012 IL 111711, ¶ 32; *People v. Washington*, 171 Ill. 2d 475, 489 (1996). The burden to make a substantial showing of a constitutional violation during second stage proceedings belongs to the petitioner. *People v. Domagala*, 2013 IL 113688, ¶ 35; *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). A substantial showing is "a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *Domagala*, 2013 IL 113688, ¶ 35. The failure to make that showing on any one of the elements of an actual innocence claim warrants dismissal. *People v. Jackson*, 2021 IL 124818, ¶ 41.

¶ 49    The meaning of newly discovered evidence is well established. "Within the context of an actual innocence claim, newly discovered evidence means evidence that was discovered after trial and that the petitioner could not have discovered earlier through the exercise of due

diligence." (Internal quotation marks omitted.) *Id.* ¶ 42; see also *People v. Robinson*, 2020 IL 123849, ¶ 53; *People v. Ortiz*, 235 Ill. 2d 319, 334 (2009).

¶ 50    In *Jackson*, 2021 IL 124818, the Illinois Supreme Court recently considered a similar postconviction claim, in which a witness later claimed the defendant was not the shooter. The supreme court concluded that the proffered testimony was not new, observing that the witness had been included in police reports and was known to the parties prior to trial. *Id.* ¶ 42. After concluding that the proffered testimony was not newly discovered, the court went on to address the defendant's argument that fundamental fairness required further proceedings because the statement had never been presented previously at trial. The supreme court soundly rejected that argument as well, noting that the witness's proffered testimony also "cut[ ] against" the petitioner, where there was evidence that the witness had originally told detectives that the petitioner was the shooter but she did not sign a statement to that effect because she and the defendant were in a relationship and she did not want to hurt his case. *Id.* ¶ 45.

¶ 51    McDonald is similar to the witness in *Jackson*, where both witnesses were included in police reports and known to the parties. *Id.* ¶ 42; see also *People v. Lenoir*, 2021 IL App (1st) 180269, ¶ 36 ("Since defendant was aware of [the witness]'s presence when these events took place, the information in [the witness]'s affidavit was known to defendant before his trial."). Indeed, it is even more apparent that McDonald's testimony is not newly discovered in this case, where he was one of the two victims that defendant was charged with shooting. Also like the witness in *Jackson*, McDonald identified petitioner before trial, although he now claims that petitioner was not the shooter.

¶ 52    Moreover, the substance of McDonald's affidavit is that petitioner spoke to McDonald before the shooting but that petitioner was not the shooter. When that is the proffered testimony, how could petitioner possibly claim that he did not know he was with McDonald? See *Edwards*, 2012 IL 111711, ¶ 34 (quoting with approval the appellate court's finding that it was " 'illogical for defendant to claim that this evidence of his alibi is new, where he obviously knew of his alibi at the time of trial, on appeal and during initial postconviction proceedings' " (quoting *People v. Edwards*, No. 1-07-0714 (2010) (unpublished order under Illinois Supreme Court Rule 23))). It is illogical to find McDonald's affidavit to be newly discovered, when petitioner clearly was aware of the evidence presented in it.

¶ 53    Like claims involving alibi testimony, which have been repeatedly rejected by our supreme court as not newly discovered, petitioner cannot possibly claim that he did not know McDonald could testify to that effect. See *Edwards*, 2012 IL 111711, ¶ 37 (" '[t]he facts concerning an alibi are peculiarly within the knowledge of a defendant himself' " (quoting *Bentley v. United States*, 701 F.2d 897, 899 (11th Cir. 1983))); *Robinson*, 2020 IL 123849, ¶ 53 ("petitioner obviously was aware of that [alibi] information prior to trial"); see also *People v. Boclair*, 2021 IL App (4th) 180813-U, ¶¶ 28, 32 (affidavits of three inmate witnesses were not newly discovered where they averred that they saw the defendant in a different area of the cell house at the time the murder was taking place; although "there were a finite number of people the investigators would have had to interview about potentially corroborating defendant's alibi," the defendant did not "offer a single explanation as to why his investigator would not have been able to locate the affiants sooner with due diligence"); *People v. Harris*, 206 Ill. 2d 293, 301 (2002) ("Clearly, the fact that defendant was allegedly with his brothers on the night of the crime could have been discovered sooner. More importantly, defendant is the source of this information and was armed with this information at the time of trial.").

- 9 -

¶ 54    The timing of the relevant events also dispels any notion that this evidence could be newly discovered. The offenses that led to petitioner's convictions occurred in June 2006, and McDonald viewed a lineup in August 2006. Petitioner's jury trial took place two years later, in August 2008. Accordingly, petitioner had approximately two years to discover McDonald's proffered testimony before trial. Petitioner, who was represented by private counsel at trial, could have attempted to locate and interview McDonald during this two-year period, but apparently did not do so. Despite petitioner's undeniable awareness of McDonald and his potential testimony, petitioner did not even attempt to issue a subpoena to McDonald. See *Robinson*, 2020 IL 123849, ¶ 53; *Edwards*, 2012 IL 111711, ¶¶ 34-38 ("[W]here there was no attempt to subpoena [two witnesses known to the petitioner at the time of trial], and no explanation as to why subpoenas were not issued, the efforts expended were insufficient to satisfy the due diligence requirement."); *People v. Walker*, 2015 IL App (1st) 130530, ¶¶ 16-18 (rejecting a claim of newly discovered evidence based upon an eyewitness who claimed to have seen the shooting and that the shooter was not the defendant; the witness's statement failed to "provide the court a reasonable explanation for either [the witness's] 27-year absence or his sudden appearance," and defendant "fail[ed] to explain why [the witness] was not located until nearly 30 years after the crime occurred").

¶ 55    Petitioner, however, claims that McDonald was "unavailable" because he was "out of town." McDonald never further explained his whereabouts or his unavailability—where he went, when, for how long, and whether he could have been contacted. McDonald's conclusory statement, that he was "out of town," is not a well-pleaded fact, but merely a conclusion, unsupported by any specific facts, which we do not accept as true at the second stage. *People v. Rissley*, 206 Ill. 2d 403, 412 (2003) ("[N]onfactual and nonspecific assertions which merely amount to conclusions are not sufficient to require a[n] [evidentiary] hearing under the Act."); *People v. Wingate*, 2015 IL App (5th) 130189, ¶ 27 (affiant's statement that it would have been "impossible" for the defendant to know that the affiant was there or had witnessed the events was a conclusion, not "a well-pleaded fact that must be taken as true"); *People v. Morris*, 236 Ill. 2d 345, 354 (2010) ("[A] petition alleging nonfactual and nonspecific assertions that merely amount to conclusions will not survive summary dismissal.").

¶ 56    Nonetheless, even if we were to accept McDonald's statement that he was "out of town" as factual, well-pleaded, and true, it still does not show that this evidence could not have been discovered in the two years before trial or the seven years since trial or that petitioner exercised due diligence. In fact, nowhere in petitioner's *pro se* original postconviction petition, his amended supplemental petition for postconviction relief filed by appointed counsel, or petitioner's brief on appeal has he argued that he could not have discovered this evidence sooner with the exercise of due diligence. Petitioner's entire argument rests upon the notion that, because a detective looked for McDonald for 30 to 45 days before trial and could not locate him, defendant "cannot be expected to have done so." The majority accepts this premise, stating: "If the State and the Chicago Police Department could not locate McDonald and obtain his testimony, despite their significant efforts, then we cannot hold, as a matter of fact or law, that defendant should have discovered the evidence before trial." *Supra* ¶ 22. Notably, the majority cites no authority for this proposition.

¶ 57    There are several flaws with this reasoning. First, there is no evidence supporting the majority's statements that the State or police made "significant efforts" to locate McDonald. The only testimony in this regard came from Detective Foster, who, when asked if he knew

where McDonald was at the time of trial, answered, "No." He was then asked if he had "looked for" McDonald, and he answered "Yes." Finally, when asked for about how long he looked, Detective Foster answered, "at least 30 to 45 days." No further questions were asked of the detective about the extent of those efforts or what particular actions were taken. To jump to the conclusion that the detective undertook "significant efforts" based on this limited testimony is totally unsupported.

¶ 58    Additionally, even if we could conclude that the detective's efforts were "significant," there is no authority to support that such efforts may be attributed to the defense. As stated above, the burden to show a substantial denial of a constitutional right at the second stage is on the petitioner, not the prosecution. *Domagala*, 2013 IL 113688, ¶ 35. Similarly, a petitioner seeking relief on the basis of newly discovered evidence bears the burden of demonstrating " 'that there has been no lack of due diligence on his [or her] part.' " *Wingate*, 2015 IL App (5th) 130189, ¶ 26 (quoting *People v. Harris*, 154 Ill. App. 3d 308, 318 (1987)). The fact that one detective tried unsuccessfully to locate a witness for trial does not, in any way, demonstrate *petitioner's* due diligence.

¶ 59    Although petitioner compares his case to *Ortiz*, 235 Ill. 2d 319, there are no similarities between the *Ortiz* decision and the facts in this case. The defendant in *Ortiz* was convicted of murdering the victim in a park in Chicago. Ten years after the murder, an eyewitness came forward, admitted to the defendant's mother that he knew the defendant had not committed the crime, and agreed to provide an affidavit. *Id.* at 327. In his affidavit, the witness stated that on the night of the murder, the witness stood in front of the field house where the murder took place and saw the victim get shot by two members of his gang, whom he identified. *Id.* The witness stated that he did not see the defendant in the park that day. *Id.*

¶ 60    The affidavit and the defendant's petition also presented several detailed reasons why the witness had been previously unavailable. The witness knew defendant, as they were members of the same gang, but they had a hostile relationship. *Id.* at 326. The witness did not report what he had seen to the police because he feared retaliation from the gang. *Id.* at 327. Additionally, not long after the shooting, the witness moved to Wisconsin, and he only came forward with his account 10 years later. *Id.*

¶ 61    In finding the evidence was newly discovered, the supreme court noted the affiant alleged that he was in an area of the park where he would not have been seen by the defendant, who had claimed in his defense that he was in a different area of the park at the time of the shooting. *Id.* at 334. The court also noted that the affiant essentially made himself unavailable as a witness by fleeing the state shortly after the murder. *Id.* Based upon these two factors, the supreme court concluded that the affidavit constituted newly discovered evidence. *Id.*

¶ 62    The factors present in *Ortiz* bear no resemblance to those presented by McDonald's affidavit. The murder in *Ortiz* took place in a public park in Chicago, and the defendant had no way of knowing that the affiant had witnessed the murder. *Id.* Here, by contrast, petitioner clearly knew that McDonald was a witness to the offense, as McDonald was one of the victims. McDonald also did not make himself unavailable by fleeing Chicago for 10 years like the witness in *Ortiz*. McDonald states only that he would have come to court for petitioner, but he was "out of town." As stated previously, McDonald does not offer any information about where he went, when, for how long, or whether he could have been contacted while he was "out of town." McDonald also does not state that he would not have testified had he been approached or subpoenaed by petitioner or his counsel during the two years before the trial.

¶ 63     This case is more akin to *Wingate*, 2015 IL App (5th) 130189, ¶¶ 26-28, in which the appellate court concluded that a witness's affidavit was not newly discovered. The witness in *Wingate* averred that he was at the scene just prior to the shooting and that he watched the encounter from about 25 feet away. *Id.* ¶ 20. Although the witness in *Wingate* stated that he waited several years to come forward because he was a close friend of the victims and had "mixed emotions" about coming forward, the court stated that the affidavit merely explained the witness's "failure to come forward sooner on his own accord, [but] it d[id] not address the question of the due diligence of the defendant in independently discovering [him] as a witness." *Id.* ¶ 27. The *Wingate* court distinguished *Ortiz*, noting that unlike the witness in that case, the witness in *Wingate* did not make any "averment that would allow us to conclude that he 'essentially made himself unavailable.' " *Id.* (quoting *Ortiz*, 235 Ill. 2d at 334). Also unlike the witness in *Ortiz*, the witness in *Wingate* made no statements of fact suggesting that he could not have been observed by defendant, and the petition contained no facts "regarding the defendant's knowledge or lack of knowledge of [the witness]'s purported witnessing of the shooting." *Id.* ¶ 29.

¶ 64     Like in *Wingate*, the defendant here has made no claim that he was unaware of McDonald as a potential witness. Indeed, there can be no doubt that defendant was aware of McDonald and his potential testimony, given McDonald's status as a victim and the substance of McDonald's potential testimony.

¶ 65     Based upon all of the above, I believe that petitioner has not shown that McDonald's affidavit is newly discovered evidence, and the trial court's second stage dismissal of petitioner's postconviction petition could be affirmed on this basis alone.

¶ 66     However, in addition to not showing that McDonald's affidavit is newly discovered evidence, petitioner has also failed to satisfy the most important element of an actual innocence claim, the conclusive character of the new evidence. *Robinson*, 2020 IL 123849, ¶ 47; *Washington*, 171 Ill. 2d at 489.

¶ 67     The conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result on retrial. *Robinson*, 2020 IL 123849, ¶ 47 Ultimately, the question is whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt. *Id.* at 48. "The new evidence need not be entirely dispositive to be likely to alter the result on retrial." *Id.* "Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Id.*

¶ 68     Looking at the old and new evidence together, it cannot be said that there is a probability that the outcome of petitioner's trial would be different on retrial.

¶ 69     The State's evidence presented at trial was substantial. Caldwell testified that on June 30, 2006, he was walking with McDonald on South Ingleside Avenue. McDonald stopped to talk to another person, and Caldwell continued to walk. Caldwell then observed petitioner walking alongside another young male riding a bicycle on the other side of the street. As he passed the pair, Caldwell turned around and saw petitioner cross the street, point a handgun at McDonald, and shoot. Caldwell ran, and petitioner shot at him and then shot back at McDonald again.

¶ 70     Caldwell's testimony was corroborated by Eddie Mastin, a retired Cook County Sheriff, who testified that on June 30, 2006, he was sitting on a bench on South Ingleside Avenue, when he heard four or five gunshots. Mastin saw a young man on a bicycle a short distance

down the street. After the gunshots, Mastin saw petitioner approach the person on the bicycle, place an object in his pocket, and the two rode away. Although Mastin could not identify the object, Mastin described it as larger than petitioner's hand. Mastin then went down the block and found McDonald and Caldwell suffering from gunshot wounds. Mastin identified petitioner shortly after the shootings in both a photo array and physical lineup.

¶ 71    Although defendant did not actually present an alibi at trial, he suggested that he was not present, arguing that the identifications of him were weak and that two other specified individuals committed the shooting. Both eyewitnesses at trial, however, were positive that petitioner was at the scene, and although the jury was presented with the defense theory, it obviously rejected it based on the guilty verdicts returned.

¶ 72    Against that evidence is the new evidence that, nine years later, McDonald now says that petitioner "did not shoot" him or Caldwell. However, the new evidence from McDonald corroborates the testimony of Caldwell and Mastin in several respects and affirmatively places petitioner at the scene. There is no longer a question of whether petitioner was present because McDonald confirms that he was.

¶ 73    Although the majority contends that McDonald avers that "someone else entirely approached him and shot him" (*supra* ¶ 25), that description mischaracterizes McDonald's affidavit. McDonald never averred that someone else approached him and shot him. All McDonald avers is that he "identified [petitioner] as the last person I spoke to before the shooting" and that petitioner "did not shoot" him or Caldwell.

¶ 74    In its written order the trial court determined that McDonald's averments were mostly conclusions, unsupported by any specific facts, and I would agree with this assessment. McDonald avers that petitioner did not shoot him or Caldwell but never explains how he knows that petitioner was not the shooter. McDonald does not identify or describe who shot him or even state that he saw the shooter or that he remembers the shooting. McDonald's statement, reduced to its essence, alleges nothing more than a conclusion on the ultimate issue. See *Morris*, 236 Ill. 2d at 354 ("a petition alleging nonfactual and nonspecific assertions that merely amount to conclusions will not survive summary dismissal under the Act"); see also *Edwards*, 2012 IL 111711, ¶¶ 39-40 (witness's affidavit claiming that the defendant had "nothing to do with" the shooting, was not "of such conclusive character that it would probably change the result on retrial" (internal quotation marks omitted)).

¶ 75    On appeal, the State also argues that McDonald's proffered testimony could be discredited with the substantively admissible prior inconsistent statements that he gave to police, as well as two identifications McDonald made of petitioner just after the shooting. In his affidavit, McDonald admits he viewed a lineup and that he identified petitioner in the lineup, albeit, not as the shooter.

¶ 76    Based upon the entire record, however, there seems to be no question that McDonald previously identified defendant as the shooter. In fact, petitioner's appointed attorney characterized McDonald's affidavit as a recantation, describing the affidavit as "essentially [the] recanted testimony of Maurice McDonald, who *** says *** unequivocally *** that [petitioner] was not the shooter."

¶ 77    The trial court also recognized that if McDonald had told detectives that petitioner was not the shooter, as he stated in his affidavit, that information would have been required to be disclosed to the defense under *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner, however, has never claimed that the State failed to disclose this information, even after petitioner was

given the assistance of appointed counsel and on appeal. Because there is no dispute that McDonald's affidavit was indeed a recantation of his earlier identifications of petitioner as the shooter, those prior identifications would be admissible if McDonald testified at a retrial. See *People v. Bowen*, 298 Ill. App. 3d 829, 835 (1998) ("[P]rovided the declarant testify at trial and be subject to cross-examination concerning the prior statement of identification of a person made after perceiving him, the prior statement of identification, testified to by the declarant or another witness, including a police officer, is now admissible as an exception to the hearsay rule as substantive evidence ***." (Internal quotation marks omitted.)); *Jackson*, 2021 IL 124818, ¶ 45 (finding that proffered testimony was not new, and that fundamental fairness did not require its consideration where it "cut[ ] against petitioner in certain respects," and supported the State's theories); *People v. Fluker*, 318 Ill. App. 3d 193, 201 (2000) (a shooting victim's out-of-court identification of the defendant as the shooter, which was inconsistent with her trial testimony, was admissible as substantive evidence of defendant's identity). This significant impeachment of McDonald's proffered testimony provides further support for the conclusion that the new evidence would not likely change the outcome on retrial when compared with all the other evidence, old and new.

¶ 78        Recantations, as a rule, are regarded as inherently unreliable, and courts will rarely grant a new trial on that basis except in extraordinary circumstances. *People v. Morgan*, 212 Ill. 2d 148, 155 (2004); see, *e.g.*, *People v. Fenton*, 2021 IL App (1st) 171483-U (summary dismissal of a postconviction petition affirmed over defendant's actual innocence claim based on an affidavit in which a witness recanted his trial testimony and claimed that the defendant was not present for the shooting; "[e]ven without assessing the veracity of [the witness]'s affidavit," the other evidence "overwhelmingly implicate[d] defendant as the shooter, and we do not find that there is a probability that a fact finder would reach a different result on retrial"); *People v. Norsworthy*, 2021 IL App (2d) 190349-U (affidavit reporting that shooting victim recanted his trial testimony of the shooting did not support a colorable postconviction claim of actual innocence to survive second stage dismissal where the recantation was positively rebutted by evidence from several other witnesses that defendant shot the victim; "the recantation, when considered in light of [the witness]'s prior inconsistent trial testimony, would not probably change the outcome of the proceeding"). There are no extraordinary circumstances here. In fact, as stated above, McDonald's affidavit corroborates the trial testimony of Mastin and Caldwell in several ways. Moreover, McDonald's affidavit provides no information to explain the reason for his subsequent recantation.

¶ 79        In these circumstances, McDonald's recantation, considered in light of the strong evidence of petitioner's guilt elicited at trial as well as McDonald's prior identifications of petitioner as the shooter, would not probably change the outcome on a retrial.

¶ 80        Finally, I would clarify that, by concluding that the new evidence in McDonald's affidavit would probably not result in a different outcome on retrial, I am not assessing McDonald's credibility. Rather, I am making a commonsense conclusion that the affidavit's content provides no realistic probability that the outcome of a retrial would be different, which is the kind of probabilistic determination that trial and appellate courts are called to perform when evaluating a postconviction petition. See *Robinson*, 2020 IL 123849, ¶ 48.

¶ 81        I would also note that this is not an appeal from a first stage dismissal. Instead, petitioner's claim was advanced to the second stage, and he was appointed counsel who filed a supplemental petition. As stated above, at the second stage petitioner bears the burden to make

a substantial showing of actual innocence. *Domagala*, 2013 IL 113688, ¶ 35; *Sanders*, 2016 IL 118123, ¶ 37. I agree with the trial court's conclusion that defendant has not made the requisite showing because McDonald's affidavit is not newly discovered and it is not so conclusive that it would change the outcome on retrial.

¶ 82     For the foregoing reasons, I respectfully dissent.