NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240111-U

NOS. 4-24-0111, 4-24-0387 cons.

IN THE APPELLATE COURT

FILED
December 17, 2024
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| CAROL PURDUE, | ) | No. 00CF417 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher G. Perrin, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's amended postconviction petition, which advanced an actual
innocence claim, was properly dismissed at the second stage because the letters
and affidavits attached to the petition suggesting defendant was not involved in
the murder of which she was convicted were not of such conclusive character that
they would probably change the result on retrial.

¶ 2     Defendant, Carol Purdue, appeals the second-stage dismissal of her amended

postconviction petition. She argues the dismissal was improper because she made a substantial

showing of her actual innocence. We affirm.

¶ 3                              I. BACKGROUND

¶ 4     The facts of this case are well known to the parties and this court. Thus, we

include only those facts necessary to resolve this appeal.

¶ 5     On May 11, 2000, defendant was charged with six counts of solicitation of

murder for hire (720 ILCS 5/8-1.1(a), 8-1.2(a) (West 2000)), five counts of murder (*id.* § 9-

1(a)(1), (a)(2)), and one count of conspiracy to commit murder (*id.* § 8-2). At trial, the State claimed (1) defendant conspired with Joretta Purdue (defendant's 19-year-old daughter), Christopher Cooley, and Sharron Davis to murder Raymond Sidener (the man with whom defendant lived) and (2) defendant, or someone for whose conduct she was legally responsible, murdered Sidener on the morning of April 21, 2000. Joretta and Davis testified in detail about defendant's participation in Sidener's murder. Their testimony was given in exchange for the State's leniency in sentencing them for their involvement. Joretta's testimony, which was materially consistent with Davis's, was based on the statement she gave the police before her agreement with the State was made. Both Joretta's and Davis's agreements were conditioned on them testifying truthfully at defendant's trial.

¶ 6        In addition to Joretta's and Davis's testimony, the State presented testimony from police officers concerning defendant's participation in Sidener's murder. Although defendant initially denied any knowledge of or involvement with the murder, she gave a statement implicating herself after the police told her Joretta, Cooley, and Davis had been arrested and charged with Sidener's murder. Defendant's statement was materially consistent with Joretta's and Davis's testimony. Defendant admitted to Detectives Brenda House and Joseph Roesch she was at Sidener's home and let Joretta, Cooley, and Davis into the house the morning Sidener was murdered. Defendant also admitted to Detective Roesch she knew Cooley and Davis and was present in Sidener's home when he was beaten to death. Although she denied knowing why Davis asked for cleaning solution, she admitted she gave Davis the cleaning solution he threw in Sidner's face before he was beaten to death. Additionally, defendant admitted she knew Sidener had been beaten badly when she left his house the morning of April 21, 2000.

¶ 7        Defendant testified on her own behalf. She denied ever talking to Joretta about

killing Sidener; conspiring with Joretta, Cooley, and Davis to murder Sidener; going anywhere with Joretta on April 21, 2000; or being at Sidener's home when he was killed. She stated that she was tired and upset after she was arrested, and, thus, her statement consisted of the account of the murder the officers gave her.

¶ 8    Defendant also presented testimony from the relatives of John Cronister, defendant's boyfriend. Although they indicated defendant was with Cronister at various times on the night of April 20, 2000, and the morning of April 21, 2000, no evidence indicated where defendant was at all times on the morning of April 21, 2000.

¶ 9    The jury found defendant guilty of first degree murder and conspiracy to commit murder. She was sentenced to 40 years' imprisonment for first degree murder. She appealed, arguing, among other things, her conviction of conspiracy to commit murder must be vacated because it was a lesser-included offense of murder. We agreed. See *People v. Purdue*, No. 4-01-0489 (Sept. 19, 2003) (unpublished order under Illinois Supreme Court Rule 23).

¶ 10    Several months later, in June 2004, defendant petitioned *pro se* for postconviction relief (see 725 ILCS 5/122-1 *et seq.* (West 2004)). The trial court found the petition was not frivolous or patently without merit and appointed counsel to represent defendant. The State moved to dismiss. The court never ruled on this motion.

¶ 11    Eighteen years later, new appointed counsel filed an amended petition, arguing, among other things, defendant was actually innocent of the murder. Defendant alleged "co-defendant/co-conspirator and key trial witness *** Davis has recanted his trial testimony—as evidenced by the affidavits/correspondences attached [to the amended petition]—demonstrating [defendant's] actual innocence." Defendant attached to the amended petition a 2003 letter and two corresponding affidavits from Davis, which provided he contacted defendant in 2003

- 3 -

because he was challenging the voluntariness of his plea of guilty to Sidener's murder. Davis, who sought defendant's friendship, believed the claims and statements he made in his pleadings "leave ample room for relief not only for [himself] but for [defendant] also." Davis attested "all Statements and/or testimony was not True in any form, [and] That [he] was coerced to testify in that manner by the State's Attorney's Office." Davis stated prosecutors "made a deal with [him] in 'Exchange' for false testimony in [Cooley's] trial, and against both [defendant] and Joretta *** and [Cooley]." Davis intimated he, like his codefendants, was " 'coerced' " to sign false statements.

¶ 12        Defendant also attached to the petition a 2004 letter from Davis responding to questions defendant allegedly posed to him. Davis stated, "Joretta did lie because I never told her that I had done what she said about me doing that before[,] and I never saw you or even knew you before we met in the county. So you know that all of that is a lie."

¶ 13        Davis again attested in a 2005 affidavit that his statements and testimony were false, the State coerced him to testify falsely in defendant's trial in exchange for leniency, and "Joretta, [Cooley] and I was [*sic*] back [home] in Jacksonville[, Illinois] by 3:00 A.M. and 'Mr. Sidener' was still alive when we left." Davis asserted "[he] never met or saw [defendant] before until [*sic*] [he] was in custody in Sangamon County Jail." Later in 2005, Davis again attested "all statements and/or testimony was not True in any form," "[he] was coerced to testify in that manner by the State's Attorney's Office," he was told he "would get the maximum sentence on all counts of First degree Murder" if he did not "Testify for [the State]," and he "never saw [defendant] or talked to her before, until [he] saw her for the first time in the court room." Davis then asserted "[he] kn[e]w that [defendant] was never at the scene of the crime."

¶ 14        In a 2016 affidavit, Davis reiterated his statements and testimony were not true,

he was coerced by the State to testify in the manner he did, and he made a deal to testify falsely in exchange for a more lenient sentence.

¶ 15        The State moved to dismiss the amended petition, and the trial court granted the motion.

¶ 16        In December 2023, defendant *pro se* filed a successive postconviction petition, which the trial court summarily dismissed.

¶ 17        In January 2024, defendant filed a late notice of appeal of the June 2023 dismissal of her original postconviction petition. Our supreme court entered a supervisory order directing us to treat defendant's notice of appeal as properly perfected. *People v. Purdue*, No. 130428 (Ill. Feb. 13, 2024) (supervisory order). The appeal was docketed as appellate court case No. 4-24-0111.

¶ 18        In March 2024, defendant filed a late notice of appeal from the January 2024 dismissal of her successive postconviction petition. This court allowed the late notice of appeal and docketed the cause as appellate court case No. 4-24-0387.

¶ 19        On defendant's motion, this court consolidated the appeals for review.

¶ 20                              II. ANALYSIS

¶ 21        On appeal, defendant argues the trial court erred in dismissing her amended postconviction petition at the second stage. Defendant makes no argument on the summary dismissal of her successive postconviction petition. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited."). Therefore, we address only the dismissal of her amended postconviction petition.

¶ 22        The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2004)) provides a three-stage process for adjudicating a postconviction petition. This appeal concerns

the dismissal of a postconviction petition at the second stage. At the second stage, the defendant bears the burden of making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). All well-pleaded facts not positively rebutted by the trial record are taken as true. *Id.* If a substantial showing is made, the petition advances to the third stage, where the defendant is afforded an evidentiary hearing. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). If, as in this case, a substantial showing is not made, the petition is dismissed. *Id.* We review *de novo* a second-stage dismissal. *People v. Smith*, 2021 IL App (1st) 181728, ¶ 18.

¶ 23        Defendant argues her amended petition was improperly dismissed because she made a substantial showing of her actual innocence. Specifically, she claims Davis's letters and affidavits substantially showed she was actually innocent of Sidener's murder. To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character it would probably change the result on retrial. *People v. Edwards*, 2012 IL 111711, ¶ 32. "Newly discovered evidence" is evidence discovered after trial that could not have been discovered earlier through the exercise of due diligence. *People v. Robinson*, 2020 IL 123849, ¶ 47. Evidence is "material" if it is relevant and probative to the defendant's innocence, and it is "noncumulative" when it adds to what the jury heard. *Id.* Evidence is of a conclusive character if it would probably change the result on retrial. *Id.* The evidence need not be entirely dispositive to likely alter the result on retrial. *Id.* ¶ 48. Probability, rather than certainty, is key to whether the fact finder would reach a different result after considering the new evidence along with the prior evidence. *Id.* Ultimately, when the relief sought in a postconviction petition is based on newly discovered evidence showing actual innocence, we consider whether the evidence supporting the postconviction petition places the

trial evidence in a different light and undermines our confidence in the defendant's guilt. *Id.*
¶ 47. "The conclusive character of the new evidence is the most important element of an actual innocence claim." *Id.*

¶ 24        Here, although Davis's letters and affidavits may be newly discovered as well as material and noncumulative, we cannot conclude they are of such conclusive character that on retrial the jury would probably find defendant not guilty of murder. Putting aside the fact that Davis's testimony was predicated on him telling the truth, we conclude that a jury would probably find defendant guilty of murder on retrial because other evidence, aside from Davis's testimony, implicated defendant in Sidener's murder. Specifically, Joretta testified in detail about defendant's involvement with Sidener's murder. Her testimony, which was based on the statement she gave police before she made any agreement with the State, was consistent with many parts of the statement defendant gave police. Those consistencies included defendant's admissions to the police about knowing Cooley and Davis; escorting them and Joretta to Sidener's home and letting them in; giving a glass of household cleaner to Davis; and waiting while Cooley and Davis, who was carrying the glass of household cleaner, confronted Sidener in another room. Defendant admitted knowing Cooley and Davis might beat Sidener, and after listening to what transpired in the other room, she knew Sidener had been beaten very badly. Rather than check on Sidener's well-being, defendant left Sidener's house with Joretta, Cooley, and Davis.

¶ 25        Defendant argues, "Without [Davis's] testimony, Joretta's statement[s] implicating [defendant] would be seriously weakened, and there is a likely probability that the result on retrial would be different, despite [defendant's] post-arrest statement." Defendant suggests her statement to the police and Joretta's testimony are unconvincing in the absence of

Davis's testimony because (1) she initially denied any involvement with the murder; (2) the police, who had spoken to Joretta before they talked to defendant, gave defendant the details of the murder Joretta provided, which defendant then used to give her own statement; (3) several of Cronister's relatives provided her with an alibi when they indicated she was with Cronister at his house the morning of the murder; and (4) her poor relationship with Joretta caused Joretta to falsely implicate her in Sidener's murder. The record belies these points. Although defendant initially denied any participation in Sidener's murder, she was forthcoming with her involvement after the police told her only that Joretta, Cooley, and Davis had been arrested and charged with Sidener's murder. Nothing in the record, other than defendant's self-serving testimony, indicates the police told defendant what Joretta said and defendant then repeated Joretta's statement in making her own statement.

¶ 26        In fact, the record reveals Detective Roesch, the lead interviewer, was not privy to any statement Joretta made to the police before he interviewed defendant. This suggests, in contrast to defendant's claim, Joretta's testimony and defendant's statements to the police were materially consistent because they were both truthful. Further, although several members of Cronister's family testified to seeing defendant at various times on the morning Sidener was killed, no evidence indicated defendant was at Cronister's at the time Sidener was murdered. This tarnishes any alibi defendant may have. Last, while Joretta testified her relationship with defendant was not good while she was growing up and other witnesses testified to incidents where Joretta swore at defendant and manipulated her, Joretta and defendant's relationship changed for the better in 1997, three years before the murder. Indeed, their relationship was so good that defendant, without any prompting by Joretta, asked Joretta if she wanted to move in with her. Given this, any claim Joretta concocted a story about defendant's involvement in the

murder out of spite is tenuous.

¶ 27      Defendant has failed to demonstrate the newly acquired evidence was "of such conclusive character it would probably change the result on retrial." *Edwards*, 2012 IL 111711, ¶ 32. Accordingly, the trial court properly granted the State's motion to dismiss defendant's amended postconviction petition.

¶ 28                                    III. CONCLUSION

¶ 29      For the reasons stated, we affirm the trial court's judgment.

¶ 30      Affirmed.