No. 2-08-0346     Filed:  3-25-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 96--CF--544 |
| PETER HOMMERSON, | ) ) | Honorable John T. Phillips, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BURKE delivered the opinion of the court:

Following a jury trial, defendant, Peter Hommerson, was found guilty of two counts of first-degree murder in the shooting deaths of Marvin and Kay Lichtman, and the circuit court of Lake County sentenced defendant to natural life in prison.  On appeal, defendant contends that: (1) the State failed to prove him guilty of the murders beyond a reasonable doubt; (2) testimony elicited during trial violated the marital privilege; and (3) the cumulative effect of improper comments made by the prosecutors during closing argument rendered his trial unfair.  We affirm.

BACKGROUND

On January 23, 1996, at 7:38 p.m., the fire department was dispatched to the home of Marvin and Kay Lichtman.  It was determined that the fire was deliberately set by someone who used gasoline as an accelerant.  Inside a room off the foyer, Marvin's body was found clutching papers in

one hand. The remains of Kay's body and an unidentified animal were also found in the house. The coroner's testimony revealed that the Lichtmans died as a result of gunshot wounds. The forensic expert opined that the bullets and casings recovered from the victims' bodies and the crime scene were .22-caliber.

The Lichtmans were a wealthy couple and their home was filled with expensive paintings, artifacts, Hummel figurines, Remington bronzes, and other art pieces. At trial, the State maintained that defendant murdered the Lichtmans for monetary gain. The State introduced evidence that defendant had owned a glass company that had undergone a series of financial problems, which caused defendant to borrow large sums of money. The State also asserted that defendant, who had access to the house on the day of the murders, purchased cardboard boxes and rented a van that day to collect the valuables from the house. The police later found in defendant's work van an exotic vase owned by the Lichtmans.

At trial, the State introduced defendant's initial statement to the police in which he stated that he had been working at the Lichtmans' on January 23, 1996, arriving at approximately 10 a.m. After he completed some preliminary work, he left the residence between 11 and 11:30 a.m. to rent a van at a Budget rental facility in Crystal Lake, Illinois, and he purchased a number of cardboard boxes before returning to the Lichtmans' between 12:30 and 12:45 p.m. When he left the residence that morning, he told the maid to leave the garage door open because he would be returning later. Defendant said he rented a van at Budget because his work van was not running well.

At 7:08 that evening, defendant purchased seven gallons of gasoline from a Shell station six miles from the Lichtmans' residence. A gas station employee testified that she was not certain whether defendant pumped the gas into the van or a container, but the van was parked in front of

pump eight and the gas came from pump seven. The heat sensor at the Lichtmans' was triggered at approximately 7:38 p.m., which prompted the fire department to dispatch personnel.

In a later interview with police, defendant related that his real reason for renting the van was to illegally dump garbage. After leaving Budget, defendant purchased boxes to remove clutter from his Algonquin home, arriving there around noon. Later, he drove to the Lichtmans'. He arrived there around 12:30 or 12:45 p.m. and rang the bell, but no one answered. He waited for 40 minutes and then returned to his Algonquin home. Defendant said that he and his wife drove to a house they owned in Woodstock to prepare it to sell. Defendant drove the rental van. He left Woodstock and returned the van to Budget at about 5:15 or 5:30 p.m. Defendant told the police that he left Budget in his work van, drove back to Woodstock, stopping to fill up the van with gas at a Shell station, and then drove to his Algonquin home. Trial testimony showed that, based on defendant's account of his use of the rental van on the date in question, he would have traveled approximately 58 miles. However, the mileage recorded on the van's return to Budget showed a total of 29 miles.

During police questioning, defendant specifically denied owning a .22-caliber firearm. Defendant's friend, Gerald Harrison, testified that in 1994 or 1995, defendant told Harrison that he had accidentally fired his .22-caliber pistol in his basement. Defendant showed Harrison where the bullet had traveled through his gun cabinet and into the wall. The police executed a search of defendant's home, where they found holes in the back of the cabinet and in the wall behind it. During the search, the police found a receipt showing that defendant had purchased a .22-caliber pistol in March 1994. The police also found .22-caliber ammunition consistent with the shell casings recovered from the scene of the crime.

The series of events defendant alleged was originally corroborated by defendant's wife, Ros Hommerson, in a statement given to the police at the same time defendant was being interviewed. At trial, however, Ros recanted her previous statement as a lie that she told for the purpose of establishing a false excuse for defendant. Ros testified that everything she told the police in her statement was a lie and that the truth was that on the day of the offense defendant left in the morning after breakfast and did not return until after 7:30 p.m.

After defendant's questioning by the police and the discovery of the .22-caliber handgun receipt and the ammunition consistent with the evidence found at the Lichtmans', defendant fled to Mexico on January 26, 1996. Ros testified that on January 26, she and defendant drove to a motel in the St. Louis area, where she registered under a fictitious name. The next day they drove to the Mexican border and defendant crossed into Mexico on foot. The State introduced two receipts, with fabricated names and false addresses, from motels that defendant stayed at while traveling to Mexico. Ultimately defendant was served with an arrest warrant for this case on October 14, 2005, approximately 10 years after the crime was committed.

Following closing arguments, the jury found defendant guilty of two counts of first-degree murder. Thereafter, the trial court ordered defendant to serve a sentence of natural life in prison. Defendant timely appeals.

ANALYSIS

I. Sufficiency of the Evidence

Defendant first contends that the evidence adduced at trial was insufficient to show, beyond a reasonable doubt, that he was the person who caused the deaths of the Lichtmans. When a court reviews the sufficiency of the evidence, the relevant question is "whether, after viewing the evidence

in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) Jackson v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); see People v. Phillips, 215 Ill. 2d 554, 569-70 (2005), citing People v. Collins, 106 Ill. 2d 237, 261 (1985). This standard of review does not allow the reviewing court to substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses. People v. Sutherland, 155 Ill. 2d 1, 17 (1992), quoting People v. Campbell, 146 Ill. 2d 363, 375 (1992). Further, reviewing courts apply this standard regardless of whether the evidence is direct or circumstantial (Campbell, 146 Ill. 2d at 374-75), and circumstantial evidence meeting this standard is sufficient to sustain a criminal conviction (People v. Hall, 194 Ill. 2d 305, 330 (2000)). Thus, the standard of review gives "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789; see People v. Nitz, 143 Ill. 2d 82, 95 (1991).

"The trier of fact need not, however, be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. It is sufficient if all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt." Hall, 194 Ill. 2d at 330. Further, in weighing evidence, "'the trier of fact is not required to disregard inferences which flow normally from the evidence before it, [nor need it] search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt.'" People v. Wheeler, 226 Ill. 2d 92, 117 (2007), quoting Hall, 194 Ill. 2d at 332. A reviewing court will not reverse a conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." Campbell, 146 Ill. 2d at 375.

The State introduced evidence, both direct and circumstantial, that revealed the following. Defendant borrowed large sums of money for his business. He worked for the Lichtmans, whose home contained numerous pieces of valuable artwork and collectibles, and he had free access to the house through the garage on the day the murders took place. Also on that day, defendant rented a van, purchased cardboard boxes, and purchased seven gallons of gasoline a half hour before the fire department was dispatched to the fire, where gasoline had been used as the catalyst. The State also presented evidence of multiple inconsistent statements made by defendant to the police about his need for the rental van and the boxes, and his account of where he drove the van contradicted the total mileage recorded upon its return. Also, Ros recanted her statement to the police and testified that everything she had told the police was a lie; that the truth was that she could not account for defendant's activities between breakfast and 7:30 p.m. on the day the crime took place. Defendant's whereabouts on the date in question, from when a neighbor last spoke with Kay that morning to when defendant purchased the gasoline, were critical. However, the State presented evidence that defendant never gave a consistent explanation of his activities during that time. A false exculpatory statement is "probative of a defendant's consciousness of guilt." People v. Shaw, 278 Ill. App. 3d 939, 951 (1996).

Furthermore, the Lichtmans were shot with .22-caliber bullets, and defendant said he did not own a .22-caliber handgun, but the police found evidence that defendant had owned a .22-caliber handgun and in defendant's home they found ammunition consistent with the shell casings recovered at the scene of the crime. The State also introduced two receipts, with fabricated names and false addresses, from motels in which defendant stayed while making his escape to Mexico after being questioned by police. Evidence of flight and the use of an assumed name may be used as proof of

consciousness of guilt. See People v. Harris, 225 Ill. 2d 1, 23 (2007). Finally, the police discovered the Lichtmans' exotic vase in defendant's work van. Based on our examination of the evidence in light of the principles stated above, we find that a rational trier of fact could have concluded beyond a reasonable doubt that defendant committed the first-degree murders of the Lichtmans.

On appeal, defendant challenges several aspects of the State's case, alleging that weaknesses in the State's evidence render the case against him so unsatisfactory as to leave a reasonable doubt of his guilt. First, defendant contests the importance of the State's theory that he "killed for monetary gain." He points out that the Lichtmans were loyal customers of his, and had paid him approximately $50,000 for work that he previously performed, and that the police found a large amount of cash in the Lichtmans' foyer. Next, defendant contends that the record raises serious questions about his ability to have carried out the murders in the time frame advanced by the State. Defendant asserts that the neighbor testified that he noticed the Lichtmans' garage door open and close at 7 p.m. Defendant submits that he could not possibly have set the fire at the house since he was purchasing gas at that exact time. We note that the record shows that the witness testified that the garage door operated about 7 p.m., not at 7 p.m. Defendant also points out that his associate was scheduled to deliver a large wooden base to the Lichtmans' on the day of the crime and that defendant phoned him that day to confirm the delivery. Defendant asserts that it is unlikely that he would murder anyone, because he would not want to have someone else there while he committed a crime. These arguments, which go to the weight of the evidence, were made to the jury, and the jury resolved these inconsistencies in the State's favor. See People v. Milka, 211 Ill. 2d 150, 178 (2004) ("the weaknesses in the evidence that defendant cites on appeal were all presented to, and rejected by, the jury"). In light of the foregoing principles that the trier of fact must assess the credibility of the

witnesses and the weight of their testimony, resolve conflicts in the evidence, and draw reasonable inferences therefrom, and that we will not substitute our judgment for that of the trier of fact on these matters, we conclude that a rational trier of fact could have found defendant guilty of the murders beyond a reasonable doubt.

Defendant's reliance on People v. Davis, 278 Ill. App. 3d 532 (1996), is misplaced. In Davis, the defendant was convicted of murdering his ex-wife. The only evidence presented linking the defendant to the murder was the handgun used, which the defendant owned and possessed four years before the murder. In reversing the conviction, the appellate court found that the State did not rebut the testimony that the defendant last saw the handgun four years before the murder. Davis, 278 Ill. App. 3d at 540. The court further held that the State's inferences that the defendant had the opportunity to commit the crime and that he was the person who fired the handgun at the time of the homicide were based on mere speculation. Davis, 278 Ill. App. 3d at 541.

Unlike in Davis, the verdict in this case was based on more than mere speculation. Although there was no evidence that defendant still owned a .22-caliber firearm when the murders were committed, there was evidence that he possessed such a weapon in late 1994 or early 1995. Further, he still possessed .22-caliber ammunition that was consistent with the shell casings found at the Lichtmans'. Moreover, evidence of defendant's opportunity to commit the crime included defendant's statements and eyewitness testimony.

## II. Marital Privilege

Defendant next argues that certain testimony by Ros was admitted in violation of the marital privilege and constitutes reversible error. See 725 ILCS 125/6 (West 1994) (now 725 ILCS 5/115--16 (West 2008)). The marital privilege provides that, in criminal cases, a husband and wife may

testify for or against each other, but may not testify as to "any communication or admission made by either of them to the other or as to any conversation between them during marriage." 725 ILCS 5/115--16 (West 2008).

The statute creates a privilege that may be waived by the holder of the privilege, in this case, the husband. We agree with the State that defendant's failure to invoke the privilege during his wife's testimony waived the privilege. See People v. Orange, 121 Ill. 2d 364, 384 (1988). Moreover, defendant's failure to object at trial and to raise this issue in his posttrial motion has resulted in a forfeiture of this issue on appeal. See People v. Enoch, 122 Ill. 2d 176, 186 (1988).

Defendant, however, argues that the admission of Ros's testimony is subject to the plain-error rule. Under the plain-error rule, issues not properly preserved in the trial court may be considered on appeal under two limited circumstances: (1) where the evidence is closely balanced such that review will preclude the argument that an innocent person was wrongly convicted; or (2) where the alleged error is so substantial that it affected the fundamental fairness of the proceeding and remedying the error is necessary to preserve the integrity of the judicial process. People v. Herron, 215 Ill. 2d 167, 178-79 (2005); see Hall, 194 Ill. 2d at 335 (admission of evidence in violation of the marital privilege does not affect the fundamental fairness of a defendant's trial). However, before we reach the issue of plain error, we must first determine whether any error occurred at all. People v. Walker, 392 Ill. App. 3d 277, 294 (2009) ("[i]n a plain error analysis, 'the first step' for a reviewing court is to determine whether any error at all occurred"). Since we find, for the reasons discussed below, that no error occurred, we do not need to perform a plain-error analysis.

Section 115--16 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115--16 (West 2008)), provides in pertinent part:

"In criminal cases, husband and wife may testify for or against each other. Neither, however, may testify as to any communication or admission made by either of them to the other or as to any conversation between them during marriage, except *** as to matters in which either has acted as agent of the other." 725 ILCS 5/115--16 (West 2008).

At trial, Ros testified that defendant called her on the morning after the murders and said that something terrible had happened but that he did not want to talk about it on the phone. She stated that defendant sounded nervous. Ros further stated that, later that same morning, defendant called her again and told her that he had heard on the radio about the fire at the Lichtmans' and that the police might stop by. Ros testified that, when defendant returned home that afternoon, he appeared nervous and repeated that something terrible had happened. Later, defendant told Ros to lie to the police about his activities the day of the murders. Ros stated that defendant told her to tell the police that he came home for lunch around noon and again at 2 p.m., that he and Ros then drove in separate vehicles to their Woodstock house, and that she was aware of defendant's plan to rent the van that day. Ros testified that, after they both were interviewed by the police, defendant told her that he wanted to go to the St. Louis area. In fact, they did drive to St. Louis, where defendant told Ros to register under a false name at a motel. Defendant also told Ros to borrow a car, which they used to drive to the Mexican border. There they parted when defendant walked across the border into Mexico and told Ros "good-bye forever."

The State argues that the communications Ros testified to meet the criteria for the agency exception of section 115--16 of the Code, as interpreted by People v. Saunders, 288 Ill. App. 3d 523 (1997). In Saunders, the State appealed an order barring admission of conversations between the defendant and his wife because, on various occasions, the defendant asked his wife to withdraw

money from a cash station using a stolen credit card and to turn the money over to him. The State urged the adoption of a rule that would allow a spouse to testify to conversations with the other spouse when those conversations take place in the course of a joint criminal enterprise. The appellate court rejected the State's request to create a new exception to the marital privilege, finding that the exception had never been adopted in Illinois, that the marital privilege statute did not enunciate such an exception, and that the argument was explicitly rejected in People v. Krankel, 105 Ill. App. 3d 988 (1982). Saunders, 288 Ill. App. 3d at 526. Although the court denied the request, it nevertheless found that the proffered testimony was admissible under one of the rule's four exceptions, that permitting testimony of conversations between spouses concerning "matters in which either has acted as agent of the other" (725 ILCS 5/115--16 (West 2008)), because the wife was acting as her husband's agent when she withdrew the money and delivered it to the defendant at his direction. Saunders, 288 Ill. App. 3d at 526. The court stressed that the wife was acting merely for the defendant's benefit, and not their mutual benefit, when she followed his directions. Saunders, 288 Ill. App. 3d at 526.

We agree with the State that Ros was acting as defendant's agent when, solely for his benefit, she followed defendant's directions to: (1) lie about his activities on the day of the murders; (2) drive to St. Louis; (3) register at a motel, using a fictitious name; and (4) borrow a car, which they used to drive to the Mexican border. Accordingly, we find that the testimony regarding defendant's directions to Ros was not privileged and was properly admissible. Because this testimony was not privileged, we need not address defendant's alternative argument regarding ineffective assistance of counsel.

Nevertheless, there remain four other short conversations to which Ros testified that appear to have been privileged conversations between Ros and defendant. Those statements concern when defendant: (1) first telephoned Ros, after the murders, and told her that something terrible had happened but that he did not want to talk about it on the phone; (2) next phoned Ros and told her that he had heard on the radio about the fire at the Lichtmans' and that the police might stop by; (3) returned home later that afternoon and told Ros again that something terrible had happened; and (4) said "good-bye forever" to Ros when he crossed into Mexico. Because defendant waived the marital privilege and because the admission of the statements does not invoke the second circumstance under which the plain-error doctrine would apply (see Hall, 194 Ill. 2d at 335), we must examine the existence of the first circumstance of the plain-error rule, that is, whether the evidence is closely balanced.

Viewing the evidence, even excluding any conversations that may have been admitted in violation of the marital privilege, it is difficult to say the evidence in this case was closely balanced. As stated under the first issue, the State presented substantial evidence that tied defendant to the murders. Defendant worked at the Lichtmans' home on the day of the murders, lied to the police about owning a .22-caliber handgun, lied to the police about the reason he needed a rental van and boxes, purchased gasoline a half hour before the fire department was sent to a fire where gasoline had been used as the catalyst, and, after being questioned by the police and having his home searched, fled to Mexico, where he remained hidden for more than 10 years. Furthermore, defendant offered an explanation for his activities on the day of the murders, but it too was proved to be fabricated, and a valuable vase belonging to the Lichtmans was found in defendant's possession following the

murders. We conclude that the evidence is not closely balanced and that, therefore, the plain-error rule does not apply to the statements set forth above.

Likewise, defendant is unable to establish the requisite prejudice to satisfy an ineffective assistance of counsel claim. To prove ineffective assistance, defendant must demonstrate that both (1) his counsel's performance was deficient and (2) the defense was prejudiced by counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984); People v. Evans, 369 Ill. App. 3d 366, 383 (2006). In establishing sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. If a case may be disposed of on the ground of lack of sufficient prejudice, that course should be taken, and the court need not consider the quality of the attorney's performance. Strickland, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069. This determination must be made on the basis of the entire record, not isolated instances. People v. Kluppelberg, 257 Ill. App. 3d 516, 526 (1993). Effective assistance of counsel refers to competent, not perfect, representation. People v. Palmer, 162 Ill. 2d 465, 476 (1994).

As discussed, the exclusion of the offending conversations does not diminish the substantial evidence linking defendant to the offense. Counsel's alleged deficient performance in failing to object to the admission of the four brief conversations detailed above would not have changed the outcome of the trial and, thus, defendant's ineffective assistance of counsel claim fails.

Additionally, the State points out that counsel's failure to object to the conversations was not deficient representation but, instead, was a reasonable strategic decision. In order to explain why

defendant fled to Mexico, counsel argued in his opening statement that defendant left the country because he feared that he would be falsely convicted of the murders. During cross-examination of Ros, counsel asked questions regarding the conversations that took place between defendant and Ros after the police questioned them, which were consistent with the defense's theory. The following colloquy took place:

"MR. WEINSTEIN [defense counsel]: Did he ever mention that the police were trying to pin this crime on him?

ROS: Yes.

MR. WEINSTEIN: And he told you he was not guilty?

ROS: Yes."

This can be seen as reasonable trial strategy where defense counsel, by refraining from asserting the marital communication privilege, was able to delve into these conversations to help establish his theory of the case. Decisions by trial counsel that are considered to be trial strategies or trial tactics ordinarily are not reviewable in the determination of whether counsel was ineffective. People v. Adams, 338 Ill. App. 3d 471, 477 (2003).

### III. Closing Argument

Defendant last contends that the cumulative effect of improper comments made by the prosecutors during closing argument rendered his trial unfair and its outcome unreliable. Recently, in People v. Robinson, 391 Ill. App. 3d 822 (2009), this court noted a conflict in the case law concerning the appropriate standard when a reviewing court considers allegedly improper comments made during closing argument. We concluded that the supreme court may have intended that we review individual remarks under an abuse of discretion standard but that the cumulative effect of the

improper remarks as a whole would be reviewed de novo. Robinson, 391 Ill. App. 3d at 840. We leave the resolution of this issue to the supreme court, as our conclusion here would be the same applying either standard.

Defendant admits that his objections to most of the comments have not been preserved for appeal. In order to preserve any claimed trial error for review, a defendant must both object to the error at trial and include it in a posttrial motion. See Enoch, 122 Ill. 2d at 186. Since defendant failed to raise these issues in his posttrial motion and failed to properly object to the cumulative effect of the allegedly improper comments, the issues are deemed forfeited. People v. Wheeler, 226 Ill. 2d 92, 122 (2007). Defendant requests that we consider his argument under the plain-error rule.

Closing arguments must be viewed in their entirety, and the challenged remarks must be viewed in context. People v. Caffey, 205 Ill. 2d 52, 131 (2001), citing People v. Macri, 185 Ill. 2d 1, 62 (1998) (and cases cited therein). Accordingly, the simple fact that defendant did not properly object to a statement does not render that statement as if it never existed. Indeed, all statements must be considered as part of the entirety of a prosecutor's closing argument, and even statements not properly objected to may add to the context of a remark properly objected to. Wheeler, 226 Ill. 2d at 123.

Prosecutors are afforded wide latitude in closing argument. Caffey, 205 Ill. 2d at 131. In reviewing comments made in closing argument, we must ask whether the comments engendered substantial prejudice against the defendant such that it is impossible to say whether a verdict of guilt resulted from them. People v. Nieves, 193 Ill. 2d 513, 533 (2000). Misconduct in closing argument is substantial and warrants reversal and a new trial if the improper remarks constituted a material factor in the defendant's conviction. People v. Linscott, 142 Ill. 2d 22, 28 (1991). If the jury could

have reached a contrary verdict had the improper remarks not been made, or the reviewing court cannot say that the prosecutor's improper remarks did not contribute to the defendant's conviction, a new trial should be granted. Linscott, 142 Ill. 2d at 28.

Defendant first asserts that the prosecutors made improper remarks that misrepresented the evidence concerning defendant's profession and finances. Defendant cites the following comments regarding his competency as a professional:

"During the course of interviewing all of these people[,] there is another guy that [the police investigators] spoke to. Him, this guy who supposedly, who was in fact it appears hired by the Lichtman's [sic] to do an etching. His supposed experience, his supposed profession isn't doing mirrors and cutting glass tops. *** But in this case he has been able in some fashion to get employment, to get hired by Mr. and Mrs. Lichtman."

Defendant asserts that these comments implied he was an incompetent glass-work artist and had somehow fooled the Lichtmans into hiring him, but that no evidence was presented at trial to support this inference. We disagree.

Our review of the record reveals that any evidence concerning defendant's experience doing etchings came from defendant himself during his interview with the police and that the prosecutor's comment about defendant's "supposed experience" appears to refer to the many lies that defendant told the police during the murder investigation, not that he had somehow fooled the Lichtmans into hiring him.

Defendant next points to two remarks regarding his financial condition, made when a prosecutor commented that defendant borrowed between $40,000 and $50,000 from his business partner, Mark Lemp. Defendant asserts that the State used this erroneous information to exaggerate

defendant's dire financial situation at the time of the murders. The State admits that this testimony was not admitted substantively and that it was error to use it in closing argument. However, the State points out that similar evidence was admitted that defendant also borrowed $70,000 from Ros that he never repaid. Thus, the objected-to comments referred to evidence that was merely cumulative of properly admitted evidence. In addition, the trial court instructed the jury that "neither opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded." See People v. Nicholas, 218 Ill. 2d 104, 122-23 (2005); People v. Ceja, 204 Ill. 2d 332, 357-58 (2003).

Defendant next cites comments regarding the State's theory that defendant killed the Lichtmans as part of a plot to steal from them, motivated by defendant's dire financial straits. Contrary to defendant's argument, the evidence supported the remarks. Evidence admitted at trial revealed that defendant's company had gone bankrupt and had a federal tax lien and that, following its failure, defendant began working from his home and did not repay a loan of approximately $70,000.

Defendant next cites the statement in which a prosecutor related that the defense regarded the trial as "reward time," because, if there is no eyewitness or physical evidence to prove defendant guilty, "[defendant] gets a reward, and the reward he gets according to them is an acquittal, a finding of not guilty because he did his job too well." Defendant argues that this statement suggested that the jurors should not hold the State to its burden of proof, as to do so would simply "reward" a criminal's competency. We disagree.

The State's reference to the trial as "reward time" for defendant appears to be simply a reference to the nature of the evidence submitted at trial, which was mostly circumstantial. In fact,

as part of the same comment, the prosecutor specifically remarked that there were no eyewitnesses or physical evidence. The prosecutor next commented that the jury should understand that the law does not reward criminals for doing their job well. We find that the State was attempting to convey to the jury merely that the absence of direct evidence of guilt did not mean that defendant was innocent. Even if we were to find this to be an error, the jury was properly instructed on the State's burden of proof.

Defendant next points out that during the closing and rebuttal arguments, the prosecutors made false claims regarding State witness Jacquelyn Lynn's description of the van, which she saw in the Lichtmans' driveway around 3:35 p.m. on the day of the murders. Defendant argues that the State attempted to diminish the importance of her description of the van as having a luggage ladder on the back. Defendant asserts that, if there was a ladder on the van, it could not have been the van rented by defendant. However, one of the prosecutors acknowledged Lynn's description but invited the jurors to rely on their recollection of her testimony. The prosecutor also questioned whether she truly had a good look at the van, commenting that she must have been distracted and preoccupied because she was running late to pick up her son that day. In any case, as noted, the trial court instructed the jury that "neither opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded."

Defendant next asserts that a prosecutor improperly argued that defendant had brought his .22-caliber pistol to Harrison's place in Wisconsin, but Harrison said nothing at trial about defendant bringing a .22-caliber pistol there. We agree. Harrison only recounted a time when defendant accidentally fired a .22-caliber pistol in defendant's basement in late 1994 or early 1995. Harrison testified that the police looked for casings for a .22 at defendant's Wisconsin property, but this did

not imply that defendant brought a .22-caliber pistol to Harrison's place in Wisconsin. However, again, the trial court instructed the jury regarding opening statements and closing arguments, noting that any statements or arguments that are not based on the evidence should be disregarded.

Defendant next contends that it was improper for a prosecutor to use the word "significant" in relating that Winchester Super X bullets were found in defendant's basement and that the same brand and type of bullet was used to murder the Lichtmans. According to defendant, the use of the word "significant" improperly stated the rarity of such bullets. Defendant further argues that it was improper to remark that the State's ballistics expert testified that the spent casings at the murder scene and the casing in defendant's basement "had identical class characteristics." Defendant asserts that this argument overstated the nature of the ballistics evidence. We disagree and find that these statements were supported by the evidence.

Defendant's last contention cites the comment that, "[i]f you have nothing other than the fact that [defendant] knew he was so guilty that he fled the county, leaving everything behind, you have enough to convict him being placed at the scene." Defendant contends that this comment improperly stated the significance of his fleeing the country. The State admits error and notes that the prosecutor likely meant to say that defendant's fleeing the country, at a bare minimum, was proof enough to place defendant at the scene of the murders. Even though this was error, we do not find that it rose to the level of reversible error, as it was an isolated comment and the jury was instructed properly on the State's burden of proof.

Of the few remarks found to be improper, none rise to the level of reversible error on any individual basis. Moreover, viewing together all of the remarks found to be improper, we do not find that their cumulative effect cast doubt on the reliability of the jury's verdict.

Defendant cites People v. Blue, 189 Ill. 2d 99 (2000), in support of his request that we relax the forfeiture rule. In light of our decision, we need not address this argument. We note, however, that, unlike in Blue, we do not find that this case presents the "unique circumstance" that would warrant a relaxation of the forfeiture rule. The prosecutors here did not engage in the type of emotion-laden argument found in Blue. Blue, 189 Ill. 2d at 131. The majority of defendant's claims of error are that the prosecutors' comments were not based on the evidence or reasonable inferences to be drawn from the evidence. Additionally, as previously stated, the trial court admonished the jury, before and after closing argument, that the comments of the attorneys were not to be considered as evidence in the case. This further militates against a relaxation of the forfeiture rule. See People v. Carson, 238 Ill. App. 3d 457, 468 (1992) ("the trial court's admonishment to the jury that opening and closing arguments are not evidence additionally aided in preventing prejudice against defendant").

Defendant states, without argument, that his counsel ineffectively failed to object to the alleged improper prosecutorial remarks. Since defendant fails to detail his counsel's ineffectiveness under the Strickland test, we will not comment on it except to indicate that, as we found above, defendant would be hard pressed to meet the prejudice prong.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

HUTCHINSON and HUDSON, JJ., concur.