2025 IL App (1st) 241138-U

FIRST DIVISION
December 22, 2025

No. 1-24-1138

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 16 CR 02064 |
| | ) | |
| SERGIO GONZALEZ, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1   *Held*: We affirm defendant's conviction and sentence. The search of defendant's cellphone did not violate the fourth amendment. Defendant failed to show that he received ineffective assistance of counsel and, even if counsel erred, defendant cannot show prejudice because the evidence against him was overwhelming. The evidence showing defendant's codefendant used a police scanner at the time the crime was being committed was relevant in defendant's trial and, even if the evidence should have been excluded, the error was harmless. The State presented sufficient evidence to prove, beyond a reasonable doubt, that defendant discharged a firearm during the commission of the offense.

¶ 2   Following a jury trial, defendant Sergio Gonzalez was found guilty of first-degree murder. He was sentenced to 50 years in prison. Defendant now appeals his conviction and sentence. Defendant argues that: (1) the four-year delay in searching the contents of his phone was unreasonable and violated the Fourth Amendment; (2) his trial counsel was ineffective for failing to object to the foundation of the video found on his phone and the identification of him

in the video; (3) the trial court abused its discretion allowing the jury to hear about the codefendant's use of a police scanner app at the time of the crime; and (4) alternatively, the State failed to prove defendant discharged a firearm during the commission of the offense. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4      On the night of January 7, 2016, 17-year-old David Gonzalez was shot eight times on the sidewalk in front of his home on the west side of Chicago. He died before reaching the hospital. An autopsy revealed that Gonzalez had been shot eight times from behind, and one of the bullets entered his back and penetrated his heart, lungs, and aorta before exiting his body through his chest. The cause of death was blood loss due to the eight gunshot wounds and all of the wounds were found to have contributed to his death. There were no eyewitnesses, but two 911 calls alerted police to the shooting. The callers reported the location of the shooting, and they indicated that the shooters were in a white or silver SUV that fled after the shots were fired.

¶ 5      Chicago police officers Javier Alvarez and Gerardo Calderon were on patrol in the area of the shooting. Before even being alerted that there was a shooting, the officers observed a white SUV fail to stop at a stop sign. They began to follow the SUV which continued at a high rate of speed and committed additional traffic violations, including failing to stop at additional stop signs. While the officers were following the SUV, they heard the radio transmission from police dispatch that shots had been fired in the area. The officers attempted to pull over the vehicle, but the vehicle failed to stop and instead proceeded the wrong way down a one-way street. The vehicle eventually crashed into a stop sign and a fence, and three male Hispanics, including defendant, exited the vehicle and fled on foot.

¶ 6    Officer Alvarez chased defendant while Officer Calderon chased another of the vehicle's occupants, Jose Juarez. The driver of the vehicle was not chased and was never apprehended. During the foot chase, Officer Calderon observed that Juarez was in possession of a firearm with a large extended magazine as he fled. Officer Calderon told Juarez to drop the weapon, but he did not comply. Officer Calderon fired two shots at Juarez but did not hit him. Although he was not shot, Juarez dropped to the ground after the shots were fired, and Officer Calderon approached Juarez, secured a .40-caliber semi-automatic pistol, and placed Juarez under arrest.

¶ 7    Officer Alvarez chased defendant through a gangway, but he abandoned the pursuit of defendant when Officer Calderon requested assistance with arresting Juarez. Other police officers responded to the scene, and Officer Alvarez gave them a description of defendant. The officers identified footprints in the fresh snow, which led them to find defendant hiding underneath a porch about a block away from where the fleeing SUV crashed. Officer Alvarez identified defendant as the person who he chased fleeing from the SUV. Defendant was wearing only one shoe when he was found, and the officers found the matching shoe in a nearby intersection near the crashed SUV. They also found a knit glove in the street near the vehicle.

¶ 8    When the officers retraced the path of defendant's flight and searched that area, they found a 9-millimeter pistol in an alley. A search of the abandoned SUV revealed five 9-millimeter cartridge casings and four .40-caliber cartridge casings. Additional casings were found in the street at the scene of the shooting. All of the cartridge casings recovered from the vehicle and the crime scene were fired from either the 9-millimeter gun found in the alley or the .40-caliber gun recovered from Juarez.

¶ 9    A gunshot residue test was performed on both Juarez and defendant. Juarez was found to have gunshot residue on his right hand. Defendant's hands tested negative for gunshot residue,

but the right sleeve of defendant's sweatshirt tested positive. The knit glove recovered near the crashed SUV tested positive for gunshot residue, and there was gunshot residue in the driver's seat, passengers' seat, and back seat of the SUV.

¶ 10    Officers recovered defendant's iPhone when he was arrested on January 7, 2016. They secured a search warrant for the phone on April 8, 2016. However, the phone was password-protected and officers could not access the contents. It was revealed in pretrial communications that the capabilities to unlock defendant's phone were not available in 2016 when defendant was arrested.

¶ 11    However, a technology called GrayKey became available in the ensuing years that allowed authorities to unlock iPhones. The Chicago Police Department began using GrayKey in 2018, but the Attorney General's office, which was prosecuting this case, did not purchase GrayKey technology until August 2020. In February 2020, one of the prosecutors on the case became aware of the availability of the technology and sought and secured a new search warrant for defendant's phone on February 18, 2020. Using outside resources, the State was eventually able to unlock the phone, and they performed a data extraction on the phone in February 2020.

¶ 12    Once defendant's phone was unlocked, police found a video stored on the phone that shows defendant and Juarez in the backseat of a vehicle holding firearms. The video was taken less than an hour before the shooting. The phone's GPS location showed that it was located in the area of the shooting, just two blocks away, at 10:23 p.m. The shooting occurred around 10:30 p.m.

¶ 13    The trial was postponed for two years after discovery of the phone evidence. Before trial, defendant moved to suppress the evidence found on his phone. He argued that the four-year delay in searching the phone was unreasonable under the fourth amendment. The trial court

denied the motion to suppress the evidence. Defendant also filed a motion *in limine* urging the court to exclude the video on the basis that the prejudice of the video outweighed its probative value and because the gun seen in the video was a different gun than the one used in the crime. The trial court denied the motion *in limine*. The video was introduced at defendant's trial, but the corresponding audio was not played.

¶ 14   During a search of codefendant Juarez's cellphone, officers found that he had downloaded a police scanner app and was using the app on the night of the shooting. The app allows users to listen to live feeds of police radio dispatches. A specialist in digital forensics, Steven Strahm, observed that Juarez had accessed the scanner channel for the local police division, Division 9, at sometime between 8:00 p.m. and 10:30 p.m. on the night of the shooting. The app was closed at 10:30 p.m. The phone recorded the dispatches from that time period that were played by Juarez's phone.

¶ 15   Defendant filed a motion *in limine* to suppress the introduction of the evidence of Juarez's use of the police scanner app on the night of the shooting. The trial court denied the motion to suppress, but it cautioned the State in the use of the evidence because it was unclear who was listening to the transmissions on the app.

¶ 16   Defendant did not testify at trial. During opening statements, the defense drew the jury's attention to the lack of eyewitnesses and the lack of DNA or fingerprints connecting defendant to either of the weapons. The defense suggested that the State was attempting to pin the murder on defendant simply because he was found nearby. During closing arguments, the defense argued that the GPS evidence put defendant two blocks away, not at the scene of the shooting. The defense also highlighted the lack of an eyewitness to the shooting and the fact that no one actually saw defendant holding or discarding a gun. Further, the defense argued that there were

no fingerprints or DNA tying defendant to any weapon. In conclusion, the defense told the jury that the case had a lot of holes in it, and the State did not prove that it "got the right person."

¶ 17     The jury found defendant guilty of first-degree murder and further found that he personally discharged a firearm during the commission of the crime. The trial court sentenced defendant to 50 years in prison. He now appeals his conviction and sentence.

¶ 18                                    ANALYSIS

¶ 19     On appeal, defendant argues: (1) the four-year delay in searching the contents of his phone was unreasonable and violated the fourth amendment; (2) his trial counsel was ineffective for failing to object to the foundation of the video found on his phone and the identification of him in the video; (3) the trial court abused its discretion by allowing the jury to hear about the codefendant's police scanner app; and (4) alternatively, the State failed to prove defendant discharged a firearm during the commission of the offense.

¶ 20                          *I. The Search of Defendant's Phone*

¶ 21     Defendant was arrested on January 7, 2016, and his iPhone was seized as evidence by police on the same day. The State secured a warrant to search defendant's phone three months after his arrest, but it was unable to search the phone due to the phone's password protection. About a week before the case was initially set to go to trial, in February 2020, the State secured a second search warrant and unlocked defendant's phone using GrayKey, a program that allows access to password-protected phones. By searching the phone, the State found evidence tying defendant to the murder, including a video of his codefendant and him in the backseat of a vehicle holding firearms recorded about one hour before the murder. The State also found GPS location data showing defendant was in the precise area of the murder when it occurred. Defendant argues that the four-year delay between the seizure of his phone and the search of its

contents violated the fourth amendment. He thus argues that the trial court erred when it denied his motion to suppress the evidence found on the phone. Defendant contends that "[t]he State's nearly four-year delay from 2016 to 2020 in obtaining the new warrant was a violation of the Fourth Amendment, because a seizure, although reasonable at its inception, may become unreasonable, however, because of its duration." (Citing *People v. McGregory*, 2019 IL App (1st) 173101, ¶17).

¶ 22    The cases relied upon by defendant, *People v. McGregory*, 2019 IL App (1st) 173101 and *People v. Meakens*, 2021 IL App (2d) 180991, are distinguishable. In both of those cases, the searches were found to be unreasonable in violation of the fourth amendment because the State seized the sources of the data but did not seek search warrants for long periods: 8 months in *McGregory*, and 15 months in *Meakens*.

¶ 23    Here, the State secured its initial search warrant within three months of seizing defendant's phone. Defendant does not attack the legality of the initial search warrant.  He instead argues that it was the four-year period between the arrest and the issuance of the second warrant and search of the phone that was unreasonable. Those cases do not support defendant's argument, and he has failed to show that the trial court erred when it denied his motion to suppress the evidence found in the search of his phone.

¶ 24    The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. A seizure that is initially reasonable may become unlawful because of its duration; thus, "once law enforcement officers have seized an item, they must obtain a search warrant within a reasonable time." *Meakens,* 2021 IL App (2d) 180991, ¶ 14 (citing *McGregory*, 2019 IL App (1st) 173101, ¶ 17). When determining whether a seizure is

reasonable, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983). The motion to suppress evidence in this case proceeded by way of stipulation, so our review of whether the trial court erred when it denied the motion is *de novo*. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001).

¶ 25    We believe this case more closely tracks our supreme court's decision in *People v. McCavitt*, 2021 IL 125550, than *Meakins* or *McGregory*. In *McCavitt*, as in this case, the State obtained a search warrant for the defendant's computer shortly after it was seized to look for evidence of a sexual assault. The defendant was subsequently acquitted of the charges but the computer remained in the custody of the state. *McCavitt*, 2021 IL 125550, ¶ 2. In an abundance of caution, as in this case, the State obtained a second search warrant for the computer. *Id*. ¶ 19. Months later, a detective found evidence of child pornography on the computer. *Id*. ¶ 22. Defendant sought an order suppressing the use of the later found evidence. *Id*. ¶ 33.

¶ 26    The court explained that the fourth amendment does not place explicit time limits on the duration of a forensic analysis authorized by a warrant. "A search of digital data that takes several years may be reasonable as long as the search ends before trial and does not exceed the scope of the original search warrant." *Id*. ¶ 106. The court ruled that when the computer became the subject of the initial search warrant, the defendant had a much diminished expectation of privacy under the fourth amendment regarding matters that were the subject of the warrant. *Id*. ¶ 117. In the absence of allegations that probable cause dissipated during the delay, or bad faith by the State, or prejudice to the defendant, the court upheld the search. *Id*. ¶ 108.

¶ 27    In this case, as in *McCavitt*, defendant had a much diminished expectation of privacy in his phone when the warrant was issued three months after it was seized. As in *McCavitt*, there is

no allegation that probable cause dissipated during the delay or that there was evidence of bad faith by the State, and defendant was not prejudiced by the late discovery, because he had two years to prepare for trial after discovery of the new evidence.

¶ 28    The State lawfully seized defendant's phone incident to his arrest and promptly secured a search warrant. Technological advancements allowed the phone to be unlocked before trial. The State secured a second search warrant upon acquiring the necessary technology and then proceeded to search the phone. The touchstone of the fourth amendment is reasonableness. *Riley v. California*, 573 U.S. 373, 381-82 (2014). The State's process of seizing and searching the phone was reasonable and fully in line with the fourth amendment protections afforded to defendant under the circumstances. See *McCavitt*, 2021 IL 125550, ¶¶ 106-108.

¶ 29    Defendant additionally argues that the search was unreasonable because, from the time the State seized the phone in 2016 to the time it searched the phone in 2020, it did not request the passcode from him. He also claims that the State did not exercise diligence in utilizing the available GrayKey technology because that technology became available in 2018, and the State did not use it in this case until 2020, just one week before the originally scheduled trial date. Neither argument is persuasive. The fourth amendment does not require the State to seek defendant's help to unlock the phone, and it did not require the State to immediately learn about the emerging technology and use it at the earliest possible moment. Instead, the State was required to act reasonably (*Riley*, 573 U.S. at 381-82), which it did. For these reasons, we affirm the trial court.

¶ 30                    *II. Ineffective Assistance of Counsel*

¶ 31    Defendant argues that his trial counsel was ineffective for failing to object to the State not laying a proper foundation for the video found on his phone. Defendant also argues that his trial

counsel was ineffective for failing to object to testimony in which a detective identified defendant in the video.

¶ 32    The United States Constitution guarantees criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI. Thus, where a criminal defendant is convicted of an offense, but did not receive constitutionally adequate representation, he can seek relief to vindicate his constitutional right to counsel. *People v. Burnett*, 385 Ill. App. 3d 610, 614 (2008). To be entitled to relief on a claim of ineffective assistance of counsel, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 694; *People v. Scott*, 2015 IL App (1st) 131503, ¶ 27. We analyze claims of ineffective assistance of counsel by considering the entire record (*People v. Hommerson*, 399 Ill. App. 3d 405, 415 (2010)), and we review the legal question of whether counsel was ineffective *de novo* (*People v. Hale*, 2013 IL 113140, ¶ 15).

¶ 33    Defendant argues that the State failed to lay an adequate foundation for the video recovered from his phone. He argues that there was no testimony establishing the authenticity of the video.

¶ 34    To ensure that evidence admitted is reliable, a party must satisfy the "requirement of authentication or identification" by producing "evidence sufficient to support a finding that the matter in question is what its proponent claims." Ill. R. Evid. 901(a) (eff. Sep. 17, 2019). Methods of authentication include: "[t]estimony that a matter is what it is claimed to be," Ill. R. Evid. 901(b)(1); "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics of an item, including those that apply to the source of an electronic communication, taken in conjunction with the circumstances," Ill. R. Evid. 901(b)(4); or

"[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker," Ill. R. Evid. 901(b)(5).

¶ 35    To satisfy the foundational requirements for admitting the video at issue, the State could either (1) present someone with personal knowledge of what the video purported to show, or (2) satisfy the foundational requirements under the silent witness theory. *People v. Valden*, 336 Ill. App. 3d 893, 899 (2003). Under the second option, a proper foundation is laid for videos to be admitted into evidence if "the accuracy of the process that produced the evidence is established with an adequate foundation." *People v. Taylor*, 2011 IL 110067, ¶ 32. The evidence is received as a so-called silent witness or as a witness which speaks for itself. *Id*. In establishing the accuracy of the process, we consider factors such as (1) the device's capability for recording and its general reliability; (2) competency of the operator; (3) proper operation of the device; (4) showing the manner in which the recording was preserved (chain of custody); and (5) identification of the persons, locale, or objects depicted. *In re D.Q.*, 2016 IL App (1st) 160680, ¶ 27.

¶ 36    At trial, the State called as a witness Steven Strahm, director of digital forensics at the Illinois Attorney General's Office. Strahm testified that a full file extraction procedure was done on defendant's iPhone by Thomas Brown of the Illinois Attorney General's Office. The contents of the extraction were put on a hard drive and delivered to Strahm. Strahm analyzed the data from the extraction. Strahm testified that there were various images and videos of defendant on the phone. He testified that People's Exhibit 72 was an accurate recording of one of the videos found on the iPhone. The State moved to admit the video into evidence. Defense counsel objected "for the record" without stating a specific basis for the objection. The objection was

overruled. Defense counsel never specifically argued that the State failed to lay a proper foundation for the video.

¶ 37    Here, the iPhone was recovered from defendant on the night of his arrest. The phone remained in police custody until the data was extracted. There were several photos, videos, and messages on the phone identifying defendant and showing that the phone belonged to him. The video in question was one of those found on the phone depicting defendant and was an "accurate recording" of the video found on the phone. Two digital forensic experts testified about the process of accessing and analyzing the data on the phone. Through data documented by the phone and other metadata, those experts were able to determine the date and time the video was created as well as the location of the phone at that time. The experts were able to testify to the very second the video was created, 9:34 p.m. and 54 seconds on January 7, 2016, and cache data provided the location of the phone accurate within 5 meters.

¶ 38    Thus, before the video was admitted into evidence, the State established that the phone belonged to defendant, that the video was created while the phone was in defendant's possession shortly before his arrest, and that the phone was in the custody of the State from the time of defendant's arrest until the time the data extraction was performed. The State's foundation demonstrated that the device was capable of producing a reliable recording as the existence of the video itself showed (*Taylor*, 2011 IL 110067, ¶ 39), that the device was operating properly (*id*.), the device was preserved through a chain of custody, and the video was created at a specific location at a specific time. See *D.Q.*, 2016 IL App (1st) 160680, ¶ 28.

¶ 39    The State then needed to show that it was, in fact, defendant recorded in the video, which it did in multiple ways. Strahm testified that he became familiar with defendant through the contents of the phone and that the video depicted defendant. There were several photos and

videos of defendant on the phone and messages asking for "Sergio." Detective Ludwig's testimony, which is discussed in more detail below, established that it was defendant and his codefendant in the video. Thus, the State satisfied the requirements of Illinois Rule of Evidence 901 and laid a proper foundation for the introduction of the evidence, such that defense counsel cannot be said to have been ineffective for failing to object to the foundation of the evidence.

¶ 40    Corresponding to the prior issue, defendant argues that counsel was ineffective for failing to object to Detective Ludwig's identification of him in the video. Detective Ludwig testified at trial that the video of the two men in the backseat of a vehicle holding firearms were defendant and his codefendant Juarez. Our review of the trial court's decision to admit lay opinion identification testimony is under the abuse of discretion standard. *People v. Thompson*, 2016 IL 118667, ¶ 53.

¶ 41    "Lay opinion identification testimony is helpful to a determination of whether the individual depicted in a surveillance recording is the defendant where there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury." *Id*. ¶ 41. There is no prohibition on law enforcement officers providing identification testimony. *Id*. ¶ 56. Illinois Rule of Evidence 701 permits lay opinion identification testimony "if (a) the testimony is rationally based on the perception of the witness and (b) the testimony is helpful to a clear understanding of the witness's testimony or a determination of a fact in issue." Ill. R. Evid. 701 (eff. Jan. 1, 2011).

¶ 42    Here, like in *Thompson*, Detective Ludwig became familiar with defendant and his codefendant while interviewing them on the night of the shooting. Detective Ludwig was familiar with their appearances and the clothing they were wearing on the night of the crime, which was the very same day the video was recorded. Detective Ludwig was also able to

ascertain that codefendant Juarez had a unique and distinctive voice that appeared during his interview and in the video recording. It is apparent that Detective Ludwig had "some basis" for being "more likely to correctly identify defendant than the jury." *Id*. ¶ 62. Because it was clearly permissible for Detective Ludwig to identify defendant and his codefendant from the video recovered from defendant's phone, defendant cannot show that his trial counsel was ineffective for failing to raise a futile objection.

¶ 43 Defendant also contends that his trial counsel was ineffective for failing to urge the trial judge to issue an instruction to the jury that it should not draw any adverse inferences from Detective Ludwig's testimony as a law enforcement officer, and that it need not give any weight to the testimony. However, the concern present in the cases cited by defendant is not present here. The typical concern with identification by law enforcement is that it could reveal the relationship between a defendant and law enforcement, and thus, the defendant's prior criminal record. See *id*. ¶ 55. Detective Ludwig was not testifying about his familiarity with defendant based on his experiences with defendant from prior arrests, which might prejudice defendant in the eyes of the jury as a repeat offender. Instead, Detective Ludwig identified defendant and his codefendant in the video based on his experiences interacting with the two men in this case.

¶ 44 In any event, the trial court *did* instruct the jury before its deliberations about this very issue. When instructing the jury, the trial court stated that "[y]ou have before you law enforcement officer made an identification of the defendant and an individual from a video recording [*sic*]. It is for you to determine what weight, if any, should be given to that evidence." The trial court continued, "[i]n determining the weight to be given to this evidence, you should not draw any inference by the fact whether it's a law enforcement officer."

¶ 45 Finally, as to both of defendant's claims for ineffective assistance of counsel, he cannot prevail because he cannot show prejudice. See *People v. Johnson*, 2021 IL 126291, ¶ 52 (to prevail on an ineffective-assistance-of-counsel claim, a defendant must demonstrate *both* that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice). Here, there is no reasonable probability that defendant would have been acquitted even if the video had been excluded entirely. The evidence against defendant was overwhelming.

¶ 46 The existence of prejudice is a fundamental part of an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 687. Without prejudice, there is no relief for ineffective assistance of counsel. *People v. McGhee*, 2012 IL App (1st) 093404, ¶ 19. To show prejudice in an ineffective assistance of counsel claim, a defendant must show a "reasonable probability" that the result of the proceeding would have been different but for counsel's supposed error. *Strickland*, 466 U.S. at 693.

¶ 47 Here, defendant was seen by Officer Alvarez fleeing the crashed SUV as law enforcement pursued. Officer Alvarez lost sight of defendant in a gangway when the officer went to assist his partner with the arrest of Juarez. Shortly thereafter, defendant was found hiding under the porch of a residence after police tracked footprints in the freshly fallen snow. Defendant was promptly identified by Officer Alvarez as the person he was chasing before abandoning the pursuit. Defendant was also wearing just one shoe, and the matching shoe was found near the crashed SUV.

¶ 48 After retracing the path of the foot chase, a firearm was recovered from the gangway where Officer Alvarez was chasing defendant. The shell casings from that firearm were found in the backseat of the SUV where defendant was sitting and on the ground at the crime scene. The

cuff of defendant's sweatshirt tested positive for gunshot residue as did the knit glove that was found on the ground in the spot defendant exited the vehicle. The spot in the SUV where defendant was sitting also had gunshot residue. Based on the overwhelming nature of the evidence against him, there is no reasonable probability that he would have been acquitted if counsel had acted as he suggests was proper. Therefore, defendant cannot show he is entitled to relief for ineffective assistance of counsel. See *McGhee*, 2012 IL App (1st) 093404, ¶ 19 (absent prejudice, a defendant is not entitled to relief for ineffective assistance of counsel).

¶ 49                          *III. Codefendant's Police Scanner App*

¶ 50      Defendant argues that the trial court abused its discretion and committed plain error when it allowed the State to introduce evidence that his codefendant had and was using a police scanner app on his phone near the time of the murder. Defendant argues that it was error to allow the evidence that his codefendant's phone was "tuned in to the police scanner app on January 7, at 8:00 p.m. and was closed at 10:30 p.m. because the evidence was not relevant to any disputed issue at trial."

¶ 51      Criminal defendants have the right to a fair and impartial trial. U.S. Const., amends. V, VI, XIV; Ill. Const. 1970, art. I, § 2. A defendant's guilt must be determined solely on competent evidence. *People v. Hope*, 116 Ill. 2d 265, 275 (1986). Relevant evidence is defined under our Rules of Evidence as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). All evidence must be relevant to be admissible. *People v. McBride*, 2020 IL App (2d) 170873, ¶ 30. A trial court's decision on the admissibility of evidence is reviewed for an abuse of discretion. *Id.* ¶ 32.

¶ 52    Defendant argues that the evidence that the police scanner app was open on Juarez's phone and in use on January 7, at 8:00 p.m. and was closed at 10:30 p.m. was not relevant because there was no evidence that defendant was listening to the police scanner app on Juarez's phone at any time. The trial court allowed the evidence because defendant could have been found responsible for the murder under the State's accountability theory. Defendant, however, argues that the evidence that Juarez's phone recorded the police dispatch after the shooting does nothing to show that defendant aided, abetted, agreed or attempted to aid Juarez either before or during the commission of an offense.

¶ 53    Defendant argues that the admission of this evidence was erroneous and prejudicial, as the State argued to the jury that defendant was in on a "plan" with Juarez as shown by the fact that "they were listening" to the "police frequencies" on an app. In its closing argument, the State argued to the jury, "You know they're driving around in that neighborhood, in that area listening to the 9th District's police radio traffic on the scanner radio app." Defendant suggests that this argument assumed that he was there with Juarez's phone while the app was being played, and that defendant was listening to the scanner both before and after the shooting. Defendant contends that the evidence was irrelevant, speculative, misleading, and prejudicial.

¶ 54    The State proceeded at trial by attempting to prove that defendant was guilty of murder under an accountability theory. The jury was given an accountability instruction, which allowed it to find that defendant and codefendant were engaged in a common criminal design such that each was responsible for the consequences of acts committed by the other.

¶ 55    Under an accountability theory, a defendant may be found guilty if, "before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid that other person in the planning or commission of

the offense." 720 ILCS 5/5-2 (West 2022). To prove "that a defendant possessed the intent to promote or facilitate the crime, the State may present evidence that either (1) the defendant shared the criminal intent of the principal, or (2) there was a common criminal design." *People v. Fernandez*, 2014 IL 115527, ¶ 13.

¶ 56    The Illinois supreme court has held that possession of police scanners is evidence of criminal intent. *People v. Robinson*, 167 Ill. 2d 397, 407-08 (1995). The fact that his codefendant's phone was running a police scanner app at the precise time and in the precise place where a murder occurred is relevant to the question of whether defendant and his codefendant had a plan and then executed it, culminating in the victim's murder. The evidence showed that there was a plan to carry out the crime as the defendants were taking precautions to avoid being captured rather than merely behaving lawfully prior to their arrest.

¶ 57    There was evidence that defendant was in the same SUV with Juarez in close proximity while Juarez had the app running. While there was no direct evidence that defendant was hearing the transmissions, it is reasonable to infer that he was listening. The evidence showed that the parties took other precautions to avoid being caught, such as defendant having a knit glove with him, and the parties fleeing from the vehicle on foot after unsuccessfully eluding police while driving. The scanner app evidence makes it more likely that defendant was taking part in a plan to shoot the victim, and we cannot say that the trial court abused its discretion in allowing the evidence based on its relevance. An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it (*People v. Colon*, 2018 IL App (1st) 160120, ¶ 12), and those are not the circumstances here.

¶ 58    Moreover, even if it would have been improper for the trial court to allow the evidence of the police scanner app to be admitted on relevance grounds, the improper admission of evidence is harmless where there is no reasonable probability that the jury would have acquitted the defendant absent the evidence. *People v. Nevitt*, 135 Ill. 2d 423, 448 (1990). For the same reason defendant cannot show prejudice with regard to his claim of ineffective assistance of counsel, he cannot show that any error with regard to the evidence about the police scanner app caused him prejudice, as the other evidence against him was overwhelming.

¶ 59    Defendant also argues that, if we were to find the error unpreserved, we could review the admission of the police scanner evidence for plain error. However, trial counsel filed a motion *in limine* asking the trial court to exclude the evidence based on its lack of relevance. Counsel filed a posttrial motion and also raised the issue therein, so the issue is adequately preserved for review. If we were to reach the claim under a plain error analysis, we would reject defendant's contention that the evidence was closely balanced. To receive relief under the prong of plain error review on which defendant relies, a defendant must demonstrate that the evidence was closely balanced, and it is the defendant's burden to establish the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 566-67 (2007). As set out above, the evidence against him was, in fact, overwhelming, so defendant would fail to meet his burden to receive plain error relief.

¶ 60            *IV. Sufficiency of the Evidence for Sentencing Enhancement*

¶ 61    Argued in the alternative to his other arguments, defendant argues that the State failed to prove he personally discharged a firearm so as to be eligible for a sentencing enhancement. After hearing the evidence, the jury made a special finding that defendant personally discharged a

firearm during the commission of the offense. Defendant argues that the State did not prove this proposition beyond a reasonable doubt, and thus, we should reduce his sentence.

¶ 62    Both the United States and Illinois Constitutions require the State to prove every fact necessary to prove each element of the crime charged beyond a reasonable doubt. U.S. Const., amend. XIV; Ill. Const. 1970, art. 1, § 2. When evaluating whether the State's evidence is sufficient to uphold a conviction, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Wright*, 2017 IL 119561, ¶ 70.

¶ 63    Defendant contends that the State produced no eyewitnesses to the shooting, and he suggests the State did not present any physical evidence. Defendant claims that there was no forensic evidence that he ever handled either of the recovered firearms. Defendant argues that, "[i]n the absence of any physical evidence tying [him] to the weapons used in the shooting, the State's evidence here is insufficient to show that he personally discharged a firearm." Defendant argues that it was pure speculation that he abandoned the weapon in the gangway because none of the State's witnesses ever saw him in possession of a weapon and his DNA and fingerprints were not found on the gun.

¶ 64    Defendant admits that the State presented evidence that he was one of the three people in the SUV involved in the shooting. But he claims the evidence failed to show he discharged a firearm. He claims that, "only by making unreasonable and speculative inferences could the jury in this case find" that he personally discharged a firearm. We disagree. Taking the facts in the light most favorable to the State, there was sufficient evidence from which a jury could reasonably find defendant personally discharged a firearm.

¶ 65    Under a sufficiency-of-the-evidence challenge, all reasonable inferences from the evidence must be drawn in favor of the prosecution. *People v. Hardman*, 2017 IL 121453, ¶ 37. Circumstantial evidence alone can be sufficient to meet the standard of proof. *People v. Jackson*, 2020 IL 124112, ¶ 64.

¶ 66    The evidence in the case shows that shots were fired from two weapons during the commission of the murder. One of the weapons was recovered upon the arrest of Juarez. Defendant was identified by Officer Alvarez as the person who fled the crashed SUV down a gangway. There was no evidence that anyone else went down that gangway during the relevant period. Officers then recovered the second weapon from that gangway, which was a match to the second gun used in the murder. Shell casings from that weapon were found in the backseat where defendant was sitting and from which defendant fled. The cuff of defendant's sweatshirt tested positive for gunshot residue. A knit glove recovered from where defendant exited the SUV also tested positive for gunshot residue. The evidence was sufficient for a reasonable juror to have found, when considering the evidence in the light most favorable to the State, that defendant personally discharged a firearm.

¶ 67                                    CONCLUSION

¶ 68    For the foregoing reasons, the judgment of the circuit court of Cook Count is affirmed.

¶ 69    Affirmed.